FILED

JUL 30 2019

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

**NOT FOR PUBLICATION**

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: | BAP No. CC-19-1041-KuTaS |
| RYAN S. O'HARA, | Bk. No. 2:17-bk-20050-SK |
| Debtor. | |
| RYAN S. O'HARA, | |
| Appellant, | |
| v. | **MEMORANDUM**[*] |
| UNITED STATES TRUSTEE, | |
| Appellee. | |

Argued and Submitted on July 18, 2019
at Pasadena, California

Filed – July 30, 2019

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Sandra R. Klein, Bankruptcy Judge, Presiding

---

[*] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value, *see* 9th Cir. BAP Rule 8024-1.

Appearances:    Mark T. Young of Donahoe & Young LLP argued for appellant Ryan S. O'Hara.[**]

Before: KURTZ, TAYLOR, and SPRAKER, Bankruptcy Judges.

Chapter 11[1] debtor, Ryan S. O'Hara, appeals from the bankruptcy court's order denying his motion for approval of his disclosure statement and dismissing his case. We AFFIRM.

## FACTS

### A.    Prepetition Events

#### 1.    The Restitution Judgment

In 2014, Mr. O'Hara was convicted in the Superior Court of Los Angeles County of seven counts of grand theft under California Penal Code § 487(a)[2] and ordered to pay $4,594,315.96 in restitution to the victim, Chapman Leonard Studio Equipment (Chapman). The amount of the restitution included the value of property stolen or damaged. The Los

---

[**] The United States Trustee (UST) has not participated in this appeal.

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532.

[2] Cal. Penal Code § 487 states in relevant part:
> Grand theft is theft committed in any of the following cases:
> (a) When the money, labor, or real or personal property taken is of a value exceeding nine hundred fifty dollars ($950) . . . .

Angeles County District Attorney, on behalf of Chapman, obtained an abstract of judgment (Abstract). In early 2015, Chapman recorded the Abstract thereby creating a judgment lien (Lien) against Mr. and Ms. O'Hara's real property located in Stevenson Ranch, California (Property).

Between October 2014 and February 2017, Mr. O'Hara was incarcerated at Owens Valley Fire Camp in Bishop, California.

### 2. Ms. O'Hara's Bankruptcy:  Avoidance of Chapman's Lien

In December 2016, Ms. O'Hara filed a chapter 7 petition. At that time, Mr. and Ms. O'Hara held title to the Property as trustees of the O'Hara Family Trust dated March 19, 2003. The Property was encumbered by a deed of trust held by PennyMac Loan Services and by the Lien.

In July 2017, Ms. O'Hara filed a motion seeking to avoid the Lien under § 522(f) on the grounds that it impaired her $100,000 homestead exemption. The bankruptcy court granted her motion and avoided the Lien in the amount of $4,042,446.38, with the balance of $551,869.58 remaining on the Property (Avoidance Order).

### B. Mr. O'Hara's Bankruptcy

On August 16, 2017, Mr. O'Hara filed his chapter 11 case.

In June 2018, Mr. O'Hara filed a disclosure statement and plan and motion to approve the disclosure statement. No timely objections were filed, but the UST appeared at the hearing and argued that the disclosure

statement was inadequate as Mr. O'Hara had under reported his living expenses. The bankruptcy court agreed but also noted that Mr. O'Hara's average post-petition monthly net income was negative and that the debt owed to Chapman appeared to be nondischargeable. The court requested Mr. O'Hara's counsel to provide a chart showing what the monthly operating reports (MORs) reflected from the beginning of the case to the present. And, if the numbers had not changed by the time of the next hearing, the bankruptcy court stated that the case would most likely be dismissed. The matter was continued to November 29, 2018.

On October 2018, Mr. O'Hara filed an amended disclosure statement and plan and sought approval of the disclosure statement. Under this version of the plan, relying on the Avoidance Order, Mr. O'Hara proposed to pay the secured portion of the Lien through his plan. He maintained, however, that the unsecured portion of the Lien was dischargeable. Therefore, he proposed to pay a small percentage of the unsecured portion over twenty-five to thirty years without interest.

The UST objected to the disclosure statement on the grounds that there were errors and ambiguities that needed to be addressed before a determination could be made regarding the feasibility of Mr. O'Hara's plan.

At the November 29, 2018 hearing, the bankruptcy court found minor issues, and what it called "deal breaker issues," with respect to the disclosure statement and the plan. The minor issues included, among other

4

things, inconsistencies between the disclosure statement and the plan concerning the payment of tax claims, and discrepancies between the MORs and Mr. O'Hara's average monthly income set forth in the disclosure statement. The court viewed as a "deal breaker," Mr. O'Hara's declaration of post-petition income which did not indicate whether he was paying property taxes or insurance on the Property or explain what kind of consulting work he was doing or whether it was full or part time. In addition, although Mr. O'Hara claimed he received $12,540 in monthly income from his job as an accountant and consultant, he did not deduct any payroll taxes or social security from his calculations of monthly net income.

The court also observed that Chapman's claim was $5.88 million and that it appeared the plan was relying on the Avoidance Order in Ms. O'Hara's case to provide for only the secured portion of the claim. The bankruptcy court found that Mr. O'Hara could not rely on the Avoidance Order because it had made no determination on whether Chapman's claim was secured or unsecured. The bankruptcy court also noted that the restitution debt, whether secured or unsecured, was a nondischargeable debt under § 523(a)(7). After hearing further argument, the bankruptcy court authorized additional briefing on the issues of whether (1) the Avoidance Order was binding in Mr. O'Hara's case and (2) the full restitution debt was dischargeable.

The bankruptcy court found that the disclosure statement and plan

were inadequate for the second time and stated that it would not go through it a third time when the MORs said something different than the plan. The court stated that it would dismiss Mr. O'Hara's case if it was not bound by the Avoidance Order and if the full restitution debt was nondischargeable.

Pursuant to a scheduling order, Mr. O'Hara submitted his supplemental brief. First, he argued that issue preclusion[3] applied to the bankruptcy court's findings in connection with the Avoidance Order in Ms. O'Hara's case. According to Mr. O'Hara, his plan of reorganization proposed to pay off the secured portion of the Lien in full through the length of the chapter 11 plan. The remaining voided portion of the Lien would be treated as an unsecured claim. If the bankruptcy court decided that issue preclusion was inapplicable, Mr. O'Hara requested an opportunity to file a motion to avoid the Lien which impaired his homestead exemption.

Second, Mr. O'Hara maintained that the unsecured portion of the restitution debt was dischargeable. He argued that it was not a debt "for a fine, penalty, or forfeiture" nor was it "payable to a governmental unit" or "for the benefit of a governmental unit" since it was payable to Chapman. Mr. O'Hara also asserted that the restitution was compensation for actual

---

[3] Modern terminology, following the approach of the Restatement (Second), replaces the term "collateral estoppel" with "issue preclusion."

pecuniary loss. According to Mr. O'Hara, even if the unsecured portion of the restitution debt was nondischargeable, Chapman would not be able to enforce its unsecured claim until all plan payments were completed. Therefore, the possible nondischargeability of the unsecured portion of the Lien was "not an issue" as to confirmation of the plan.

At the February 6, 2019 status conference, the bankruptcy court found that issue preclusion did not apply to the Avoidance Order because the issues in Ms. O'Hara's lien avoidance motion were not identical to those in Mr. O'Hara's case. The court reasoned that the value of the Property and Lien were determined on the petition date in Ms. O'Hara's case and would have to be redetermined as of the petition date in Mr. O'Hara's case. The bankruptcy court also found that the full amount of the restitution debt was nondischargeable under § 523(a)(7). As a result, the court found that Mr. O'Hara's plan of reorganization was not feasible. The bankruptcy court dismissed Mr. O'Hara's case on feasibility grounds and under § 1112(b)(4)(A) on the basis that there was substantial or continuing loss to or diminution of the bankruptcy estate and the absence of a reasonable likelihood of rehabilitation.

The bankruptcy court entered an order denying Mr. O'Hara's motion for approval of the disclosure statement and dismissed his case. This timely appeal followed.

## JURISDICTION

The  bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(2) (A), (I) and (O). We have jurisdiction under 28 U.S.C. § 158.

## ISSUES

Whether the bankruptcy court erred in determining that the doctrine of issue preclusion did not apply to the Avoidance Order;

Whether the bankruptcy court erred in determining that the full restitution debt was nondischargeable under § 523(a)(7); and

Whether the bankruptcy court abused its discretion by dismissing Mr. O'Hara's bankruptcy case.

## STANDARDS OF REVIEW

We review de novo the bankruptcy court's determination that issue preclusion was available. *Tomkow v. Barton (In re Tomkow)*, 563 B.R. 716, 722 (9th Cir. BAP 2017) (citing *Black v. Bonnie Springs Family Ltd. P'Ship (In re Black)*, 487 B.R. 202, 210 (9th Cir. BAP 2013). If issue preclusion was available, we then review the bankruptcy court's application of issue preclusion for an abuse of discretion. *Id.*

A bankruptcy court abuses its discretion if it applies the wrong legal standard or misapplies the correct legal standard, or if its factual findings are illogical, implausible, or without support in inferences that may be drawn from the facts in the record. *Id.* (citing *TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 832 (9th Cir. 2011) (citation omitted).

8

We review de novo a bankruptcy court's conclusions of law, including statutory interpretations. *Parks v. Drummond (In re Parks)*, 475 B.R. 703, 706 (9th Cir. BAP 2012) (citation omitted).

Whether a claim is nondischargeable presents mixed issues of law and fact and is reviewed de novo. *Carrillo v. Su (In re Su)*, 290 F.3d 1140, 1142 (9th Cir. 2002).

We review a bankruptcy court's decision to dismiss a chapter 11 case under the abuse of discretion standard. *Tennant v. Rojas (In re Tennant)*, 318 B.R. 860, 868-69 (9th Cir. BAP 2004).

## DISCUSSION

### A. Issue Preclusion: Avoidance Order

Mr. O'Hara contends that the bankruptcy court erred by finding issue preclusion inapplicable to the Avoidance Order. However, in his opening brief, Mr. O'Hara essentially concedes that issue preclusion is not applicable to the value of the Property. He states that the value of the Property "may have changed" during the eight month gap between his and Mrs. O'Hara's bankruptcy filings and contends that the change in value could easily be addressed by allowing him to submit an updated appraisal. *See Culver, LLC v. Chiu (In re Chiu)*, 266 B.R. 743, 751 (9th Cir. BAP 2001) (value of property and lien determined as of the petition date). Accordingly, while some of the issues for lien avoidance in Mr. O'Hara's case were similar to those in Ms. O'Hara's case, they were not identical. *See*

*McQuillion v. Schwarzenegger*, 369 F.3d 1091, 1096 (9th Cir. 2004) (to apply issue preclusion, the issue at stake must be identical to the one alleged in the prior litigation); *Fund for Animals, Inc. v. Lujan*, 962 F.2d 1391, 1399 (9th Cir. 1992) (issue preclusion applies only when the issues presented in each matter are identical—the doctrine is inapplicable if the issues are merely similar) (citation omitted).

**B.    Section 523(a)(7): Dischargeability of the Restitution Debt**

Section 523(a)(7) states that a debtor may not discharge any debt (1) to the extent such debt is for a fine, penalty, or forfeiture (2) payable to and for the benefit of a governmental unit, and (3) is not compensation for actual pecuniary loss.

On appeal, Mr. O'Hara argues that none of the three statutory requirements for nondischargeability have been met. First, he contends that the restitution order was not a debt "for a fine, penalty, or forfeiture," asserting that it is instead for "restitution." According to Mr. O'Hara, restitution is statutorily defined in California Penal Code § 1202.4(f) as "based on the amount of loss claimed by the victim." By contrast, he points out, "forfeiture" is defined in California Penal Code § 186, *et seq.* as "a means of punishing and deterring criminal activities of organized crime and requires that a separate petition for forfeiture be filed by the prosecuting agency (Penal Code § 186.4)." Since the definitions for "forfeiture" and "restitution" are different, Mr. O'Hara concludes that the

first requirement for nondischargeability has not been met. Next, he contends that the restitution is payable to Chapman, who is not a government entity. Last, Mr. O'Hara points out that the compensation is for actual pecuniary loss. In essence, Mr. O'Hara advocates a literal interpretation of the plain language in the statute.

These arguments are squarely precluded by *Kelly v. Robinson*, 479 U.S. 36 (1986) and Ninth Circuit case law. In *Kelly*, the Supreme Court interpreted the statutory language in § 523(a)(7) broadly, not literally, to include criminal restitution debts. The Supreme Court construed § 523(a)(7) as applying to all penal sanctions, including restitution debts, regardless of whether they were denominated fines, penalties, or forfeitures, and despite the fact that restitution is forwarded to the victim and may be calculated by reference to the amount of harm the offender caused. The Court's broad interpretation was due to concerns about federal interference with state court criminal prosecutions, the history of bankruptcy court's deference to criminal judgments, and the interests of the States in unfettered administration of their criminal justice systems. *Id.* at 43–44. Because Congress had not explicitly overruled the well-established judicial exception exempting criminal restitution payments from dischargeability statutes, the Court declined to read the statute as doing so. *Id*. at 47. In the end, the Court held that "§ 523(a)(7) preserves from discharge *any condition* a state criminal court imposes as part of a criminal sentence." *Id.* at 50.

11

The Ninth Circuit has commented on the *Kelly* Court's deviation from the statutory language in § 523(a)(7), noting that it has led to "considerable confusion among federal courts and practitioners about [§] 523(a)(7)'s scope." *Scheer v. The State Bar of Cal. (In re Scheer)*, 817 F.3d 1206, 1210 (9th Cir. 2016). Nonetheless, in construing the scope of § 523(a)(7) in connection with a debt owed by an attorney to her former client, the Ninth Circuit reiterated *Kelly's* analysis that § 523(a)(7) must be interpreted in light of historical deference to the states' interests in administering their criminal justice systems:

> While restitution resembled a judgment 'for the benefit of' the victim, the Court concluded that the overall role of restitution in 'the State's interests in rehabilitation and punishment, rather than the victim's desire for compensation,' meant that the criminal restitution actually operated 'for the benefit of' the state as far as section 523(a)(7) was concerned. The sentence following a criminal conviction necessarily considers the penal and rehabilitative interests of the State. Those interests are sufficient to place restitution orders within the meaning of § 523(a)(7).

*Id.* at 1210 (citing *Kelly*, 479 U.S. at 52–53). *Kelly's* deviation from the statutory language was justified by "unique concerns of state criminal proceedings" and "pre-Code practices" that "reflected policy considerations of great longevity and importance." *Id.* at 1211 (citing *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 244–45 (1989)).

Scheer did not pay her former client the outstanding balance on an

12

arbitration award and was suspended from the practice of law by the California State Bar Court until she paid back all the funds and the court granted a motion to terminate her inactive status. Scheer then filed bankruptcy and sought to discharge the debt. In applying *Kelly*, *State Bar of Cal. v. Findley (In re Findley)*, 593 F.3d 1048, 1054 (9th Cir. 2010), and the plain language of the statute, the Ninth Circuit reversed the district court and found the debt dischargeable. While not condoning the attorney's conduct, the court reasoned that the amount Scheer owed to the former client was not a fine or penalty, but compensation for actual loss, and also was not disciplinary. *Id.* at 1211. Therefore, it did not fall within the scope of § 523(a)(7).

In contrast to *Scheer*, there is nothing in the record that shows the state court's order requiring Mr. O'Hara to pay restitution to Chapman was anything other than a fine or penalty and disciplinary. Under California law, "[a]lthough based in part on the harm caused to the victim ([Cal.] Pen. Code, § 1202.4 (g)), restitution is imposed primarily for the benefit of the state to promote the state's interests in rehabilitation and punishment." *People v. Moser*, 50 Cal.App. 4th 130, 135 (1996) (citation omitted). The *Moser* court further explained:

> Restitution 'is an effective rehabilitative penalty because it forces the defendant to confront, in concrete terms, the harm his actions have caused. Such a penalty will affect the defendant differently than a traditional fine, paid to the State as an

abstract and impersonal entity, and often calculated without regard to the harm the defendant has caused. Similarly, the direct relation between the harm and the punishment gives restitution a more precise deterrent effect than a traditional fine.' *Id.* at 135-36.

California law on restitution is thus consistent with *Kelly*.

The Ninth Circuit has addressed an argument similar to Mr. O'Hara's in *Armstrong v. Kaplon (In re Armstrong)*, 677 F. App'x 434 (9th Cir. 2017). There, Armstrong contended that his criminal restitution was dischargeable because, unlike the state statute at issue in *Kelly*, the California Penal Code provides for both "restitution" and a "restitution fine." *Compare* Cal. Penal Code § 1202.4(f) ("[I]n every case in which a victim has suffered economic loss as a result of the defendant's conduct, the court shall require that the defendant make restitution to the victim or victims in an amount established by court order, based on the amount of loss claimed by the victim or victims or any other showing to the court.") with Cal. Penal Code § 1202.4(b) ("In every case where a person is convicted of a crime, the court shall impose a separate and additional restitution fine, unless it finds compelling and extraordinary reasons for not doing so and states those reasons on the record."). Armstrong argued that the holding of *Kelly* extended only to the "restitution fine," and not to a restitution order issued under California Penal Code § 1202.4(f). *Id.* at 435.

The Ninth Circuit found that this argument was squarely precluded

by *Kelly*, which categorically held that criminal restitution orders are nondischargeable. *In re Armstrong,* 677 F. App'x at 436 (citing *Kelly*, 479 U.S. at 49–50).

> [T]he *Kelly* Court's holding did not hinge upon the specific language or structure of the state law at issue. Rather, it was based upon the desire not to interfere with state courts' 'unfettered administration of their criminal justice systems.' Here, Armstrong's restitution order served California's penological interests and was imposed as a function of the administration of that state's criminal justice system. It therefore falls within the scope of *Kelly*, even though the California penal statute also provides for the imposition of a separate 'restitution fine.' To hold otherwise 'would hamper the flexibility of state criminal judges in choosing the combination of imprisonment, fines, and restitution most likely to further the rehabilitative and deterrent goals of state criminal justice systems.' *Id.* (citations omitted).

The *Armstrong* court observed that it had followed *Kelly* numerous times and had no occasion to revisit or challenge its holding. *Id.* (citing *State Comp. Ins. Fund v. Zamora (In re Silverman)*, 616 F.3d 1001, 1008 (9th Cir. 2010) ("As Kelly made clear, criminal restitution payments are nondischargeable."); *State Bar of Cal. v. Taggart (In re Taggart)*, 249 F.3d 987, 994 n.9 (9th Cir. 2001) ("The Supreme Court has held that '§ 523(a)(7) preserves from discharge any condition a state criminal court imposes as part of a criminal sentence.'") (quoting *Kelly*, 479 U.S. at 50); *Palmer v. Levy (In re Levy)*, 951 F.2d 196, 198–99 (9th Cir. 1991) (*Kelly* "held that restitution

15

obligations imposed in state criminal proceedings are not dischargeable."")).

Contrary to Mr. O'Hara's assertions, the dischargeability of a restitution debt does not depend upon who receives the actual benefits nor does it matter that the restitution amount is equivalent to the victim's loss. *Kelly*, 479 U.S. at 51-52; *In re Armstrong*, 677 F. A'ppx at 436 ("T]he fact that restitution was based on the amount of loss 'claimed by the victim or victims' is irrelevant, for 'such [is] the nature of restitution.'") (citing *Steiger v. Clark Cty., Wash. (In re Steiger)*, 159 B.R. 907, 912 (9th Cir. BAP 1993).

Mr. O'Hara relies on *In re Towers*, 162 F.3d 952 (7th Cir. 1998), in support of his argument that § 523(a)(7) is inapplicable where the restitution award is paid to a victim rather than the governmental unit. *Towers* is distinguishable because it involved a *civil* restitution award, not a *criminal* one, and is not binding authority.

Mr. O'Hara also contends, without citation to any authority, that only the unavoided portion of the Lien would be nondischargeable and the avoided unsecured portion would be dischargeable. Section 523(a)(7) does not make any distinction between secured or unsecured debts. Further, a chapter 11 plan may not operate to discharge an otherwise nondischargeable debt. *Computer Task Grp., Inc. v. Brotby (In re Brotby)*, 303 B.R. 177, 189 (9th Cir. BAP 2003); *State of Cal., State Bd. of Equalization v. Ward (In re Artisan Woodworkers)*, 225 B.R. 185, 190 (9th Cir. BAP 1998).

Accordingly, for all these reasons, the bankruptcy court did not err in

finding that the full amount of the restitution debt was nondischargeable under § 523(a)(7).

## C. Dismissal of Mr. O'Hara's Case

Mr. O'Hara assigns several errors to the bankruptcy court's decision dismissing his case: (1) the dismissal of his case did not meet basic due process requirements; (2) the court erred in its findings regarding "cause"; and (3) the court erred by failing to consider alternatives to dismissal and which alternative was in the best interest of creditors.

### 1. Due Process

We find no violation of due process. Mr. O'Hara did not complain about the lack of due process in the bankruptcy court and thus failed to properly preserve the issue fo r appeal. *See Rains v. Flinn (In re Rains)*, 428 F.3d 893, 902 (9th Cir. 2005); *Campbell v. Verizon Wireless S–CA (In re Campbell)*, 336 B.R. 430, 434 n. 6 (9th Cir. BAP 2005) (citing *O'Rourke v. Seaboard Sur. Co. (In re E.R. Fegert, Inc.)*, 887 F.2d 955, 957 (9th Cir. 1989) ("The rule in this circuit is that appellate courts will not consider arguments that are not 'properly raise[d] in the trial courts.'")).

Even if we consider de novo whether Mr. O'Hara was given due process before the bankruptcy court dismissed his case, we conclude that he was. Section 1112(b)(1) provides that only "on request of a party in interest, and after notice and a hearing" may a case be dismissed for cause. Similarly, a sua sponte conversion or dismissal can only be ordered after

notice and an opportunity to be heard. *Tennant v. Rojas (In re Tennant)*, 318 B.R. 860, 869–70 (9th Cir. BAP 2004) (holding that "notice and a hearing" are required even where the bankruptcy court acts pursuant to "its general powers under Section 105(a)"). Adequate notice and adequate opportunity for hearing is a flexible concept that depends on the circumstances of the particular case. *Id.* at 870–71. We thus consider whether the notice given to Mr. O'Hara about the dismissal of his case was "reasonably calculated" to give him a meaningful opportunity to oppose dismissal if he so desired.

The record shows that the bankruptcy court had made clear at least two times during different hearings on the adequacy of Mr. O'Hara's disclosure statement that his case may be dismissed. At the November 29, 2018 hearing, the bankruptcy court stated the history of the case on the record noting that it had previously considered Mr. O'Hara's disclosure statement and plan, but it did not go through all the issues with them since both the disclosure statement and plan "needed to be totally redone." The court noted: "So, I told O'Hara's counsel that I needed to see a chart of what the MOR's reflected from the beginning of the case to the present. And if the numbers had not changed by the time of the next hearing, which is today, the case would most likely be dismissed."

Later during the November 29 hearing, the bankruptcy court warned Mr. O'Hara's counsel that it would not be going through the numbers in the disclosure statement and plan for a third time. "So, the next time we're

18

here, and I'm saying these numbers don't match up, that will just be numbers don't match up[,]the case is dismissed." However, the court observed that it would "not even get there because there are two hurdles"; i.e., the binding nature of the Avoidance Order and the nondischargeability of the restitution debt. And then if restitution has to be provided for in full, then the case will be dismissed because it just doesn't make sense to keep this going any longer and to keep the creditors hanging and to keep the debtor incurring additional expenses in proposing disclosure statements and plan that just aren't going to be feasible." The matter was then set for another hearing.

Under these circumstances, we conclude that Mr. O'Hara had more than adequate notice that his case may be dismissed and more than adequate time to make further arguments to avoid dismissal.

2. **The bankruptcy court did not err in finding "cause" for dismissal.**

Section 1112(b)(4) sets forth a nonexhaustive list of what constitutes "cause" to convert or dismiss a case under § 1112(b)(1). *See Pioneer Liquidating Corp. v. United States Tr. (In re Consolidated Pioneer Mortg. Entities)*, 248 B.R. 368, 375 (9th Cir. BAP 2000). Included in the list of items constituting "cause" to convert or dismiss is the "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation." § 1112(b)(4)(A).

19

Mr. O'Hara contends that the bankruptcy court erred because it never identified any "substantial" or "continuing" loss to the bankruptcy estate. He also maintains that the court found "the absence of a reasonable likelihood of rehabilitation" but made no findings on this point other than saying that he must make "meaningful payments" on the Lien. These contentions have no merit.

The bankruptcy court found that Mr. O'Hara had lost $15,000, and averaged a $900 monthly loss, since the petition date. "A negative cash flow situation alone is sufficient to establish continuing loss to or diminution of the estate." *Loop Corp. v. U.S. Tr.*, 379 F.3d 511, 515–16 (8th Cir.2004) (internal quotation marks omitted). According to Mr. O'Hara, his MORs showed that once he had fulfilled his probation, his gross income nearly doubled, and his net income also increased. However, "[t]o determine if there is a continuing loss to or diminution of the estate, the court must look beyond financial statements and fully evaluate the present condition of the debtor's estate." *In re 412 Boardwalk, Inc.*, 520 B.R. 126, 135 (Bankr. M.D. Fla. 2014). The record shows that the bankruptcy court properly evaluated the present condition of Mr. O'Hara's estate, noting his negative monthly income and the under reporting of his living expenses.

The court also found that there was no likelihood of rehabilitation because Mr. O'Hara owed more than $5.88 million to Chapman and thus his plan, as written, was infeasible. Mr. O'Hara's plan provided payment to

Chapman over thirty years. The bankruptcy court found that it was impossible to make a finding that Mr. O'Hara could and would pay the restitution judgment, or make any of his plan payments, because there was no way of knowing what his financial situation would be in thirty years. The court determined that Chapman would most likely be in a worse position due to Mr. O'Hara's negative monthly net income, and the interest accruing on the restitution judgment. According to the court, Mr. O'Hara had not committed enough funds to paying the restitution judgment and thus the plan imperiled payment of that judgment.

The bankruptcy court also observed that the case had been pending for a year and a half, and Mr. O'Hara had filed two disclosure statements and plans that were wholly inadequate because, among other things, they undervalued his living expenses. They reflected figures for his monthly income and expenses that were significantly different from those reflected in the MORs and they did not (1) address adequately how Mr. O'Hara intended to pay the Chapman claim, (2) provide adequate financial projections, and (3) demonstrate that his plan or amended plan could be feasible. Mr. O'Hara's contention that the bankruptcy court erred in finding the plan infeasible due to his improper treatment of Chapman's claim is simply not supported by the record.

In sum, we conclude that the bankruptcy court did not abuse its discretion in dismissing Mr. O'Hara's case based on "substantial or

continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation" under § 1112(b)(4)(A).

### 3. Conversion as an Alternative to Dismissal.

Finally, Mr. O'Hara argues on appeal that the bankruptcy court should have considered conversion as an alternative to dismissal. According to Mr. O'Hara, the record is devoid of any indication that the bankruptcy court considered which option — dismissal, conversion, appointment of a trustee or examiner, or simply denial of approval of the disclosure statement — was in the best interests of the creditors and estate.

After determining whether cause exists, the bankruptcy court ordinarily must consider whether dismissal or conversion would best serve the interests of creditors. *Woods & Erickson, LLP v. Leonard (In re AVI, Inc.)*, 389 B.R. 721, 729 (9th Cir. BAP 2008) (citing *Nelson v. Meyer (In re Nelson)*, 343 B.R. 671, 675 (9th Cir. BAP 2006) ). The bankruptcy court here did not explicitly consider conversion before it dismissed Mr. O'Hara's chapter 11 case. However, this does not amount to reversible error.

Neither the UST or Mr. O'Hara argued for conversion in lieu of dismissal in the bankruptcy court. Indeed, there is nothing in the record that shows Mr. O'Hara preferred conversion over dismissal. This argument is waived on appeal. *In re E.R. Fegert, Inc.*, 887 F.2d at 957. Nor is there any evidence that demonstrates that conversion, rather than dismissal, would benefit creditors.

Under these circumstances, we decline to remand for further considerations of conversion over dismissal. *See Stinchfield v. Specialized Loan Serv. (In re Stinchfield)*, CC-17-1209-STaF, 2018 WL 1354339, at *4 (9th Cir. BAP March 13, 2018) (citing *Dudley v. Simmons (In re Dudley)*, 2014 WL 764360, at *5 n.4 (Mem. Dec.) (9th Cir. BAP Feb. 26, 2014) (same result in appeal from chapter 13 case dismissal).

## CONCLUSION

For the reasons explained above, we AFFIRM.