**ORDERED PUBLISHED**

## UNITED STATES BANKRUPTCY APPELLATE PANEL

## OF THE NINTH CIRCUIT

In re:                              )    BAP Nos.   NV-12-1122-DJuKi
                                    )               NV-12-1124-DJuKi
ROBERT R. BLACK and KELLY J.        )               (Related appeals)
BLACK;                              )
MICHAEL ALLEN CHERNINE,             )    Bk. Nos.   11-16998-BAM
                                    )               11-16999-BAM
            Debtors.                )
                                    )    Adv. Nos.  11-01241-BAM
_____ )               11-01242-BAM
ROBERT J. BLACK, JR.;               )
MICHAEL ALLEN CHERNINE,             )
                                    )
            Appellants,             )
                                    )
v.                                  )    **O P I N I O N**
                                    )
BONNIE SPRINGS FAMILY LTD.          )
PARTNERSHIP; BONNIE SPRINGS         )
MANAGEMENT COMPANY; ALAN            )
LEVINSON; BONNIE LEVINSON;          )
APRIL BOONE,                        )
                                    )
            Appellees.              )
_____ )

Argued and Submitted on January 25, 2013
at Las Vegas, Nevada

Filed - February 11, 2013

Appeal from the United States Bankruptcy Court
for the District of Nevada

Honorable Bruce A. Markell, Bankruptcy Judge, Presiding

_____

Appearances:    Randy M. Creighton, Esq. of Black & Lobello argued
                for appellants; Tyler Ryan Andrews Esq. of
                Greenberg Traurig, LLP, argued for appellees.

_____

Before:  DUNN, JURY and KIRSCHER, Bankruptcy Judges.

DUNN, Bankruptcy Judge:

Appellees Bonnie Springs Family Limited Partnership and Bonnie Springs Management Company (collectively, "Bonnie Springs"), Alan Levinson, Bonnie Levinson and April Boone (collectively with Bonnie Springs, "appellees") moved for summary judgment on their complaint against the debtors, Michael Chernine and Robert Black (collectively, "debtors"),[1] to except debts from discharge under § 523(a)(6) ("exception to discharge complaint").[2]  The debts arose from a state court judgment against both debtors for abuse of process and against Black for nuisance.  The bankruptcy court granted summary judgment in the appellees' favor ("summary judgment order") giving issue preclusive effect to the state court judgment.  The debtors appeal the bankruptcy court's summary judgment order.  We AFFIRM.

///

///

---

[1] The debtors each filed his own chapter 7 bankruptcy petition (Chernine, case no. 11-16999, and Black, case no. 11-16998).  The appellees initiated separate adversary proceedings against each debtor (Chernine, adv. proc. no. 11-1242, and Black, adv. proc. no. 11-1141).
    The debtors and the appellees filed identical or nearly identical motions and pleadings in each debtor's bankruptcy case and adversary proceeding (e.g., motion for sanctions for violation of the automatic stay, motion for summary judgment).  For the sake of convenience, we refer to these separate motions and pleadings as one motion or pleading.

[2] Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.

2

**FACTS**

A. <u>State Court Proceedings</u>

The debtors were the principals of Land Baron Investments, Inc. ("LBI"), a real estate development company. Alan Levinson, Bonnie Levinson and April Boone were general partners of Bonnie Springs, which owned a tract of undeveloped land located in Clark County, Nevada ("property"). The property was located near the Red Rock Canyon National Conservation Area, which was controlled by the Bureau of Land Management ("BLM").

In December 2004, the debtors and LBI entered into an agreement with Bonnie Springs to purchase the property ("agreement"). LBI planned to develop the property into a subdivision with a residence on each lot.

Under the agreement, the sale of the property was subject to the following conditions: 1) LBI approving the preliminary title report and exceptions to title; 2) LBI and Bonnie Springs both approving a preliminary site plan; 3) Bonnie Springs providing LBI all reports, surveys, engineering and other documents in its possession; and 4) Bonnie Springs arranging for LBI to have the right to use some of Bonnie Springs' treated wastewater for landscaping purposes. The agreement also provided the debtors and LBI several extensions to close escrow in exchange for payments of $50,000 for each extension ("extension payment").

The debtors and LBI failed to make an extension payment to Bonnie Springs ("extension payment default") on September 18, 2007. They informed Bonnie Springs by letter that they would not make the extension payment. The debtors and LBI instead proposed a lower purchase price for the property. They also listed the

3

property for sale as a single parcel.

Meanwhile, on behalf of the debtors and LBI, Black filed a complaint with the county commissioner ("county commissioner complaint") requesting an investigation and inspection of a nearby property. The county commissioner complaint involved alleged environmental issues and health code violations occurring at the Bonnie Springs Ranch ("ranch"), which was owned by the appellees and located west of the property.[3] It was not a part of the property being sold to LBI and the debtors under the agreement.

In June 2008, LBI initiated a state court action against the appellees alleging breach of contract, breach of the implied covenant of good faith and fair dealing and intentional misrepresentation/non-disclosure, among other claims. The claims were based, in part, on issues concerning water rights ("water rights issues") and access to the property ("property access issues"). Specifically, the debtors contended that they could not complete recordation of the property map until the water rights issues were resolved. They also contended that the only way to access the property was by trespassing on BLM-controlled land.

The appellees filed an answer and counter-complaint alleging abuse of process against the debtors ("abuse of process claim") and nuisance against Black ("nuisance claim"), among other claims. The abuse of process and nuisance claims arose from the

---

[3] The Bonnie Springs Ranch consisted of restaurants, western-themed shows, a petting zoo and a motel.

4

county commissioner complaint.

With respect to the abuse of process claim, the appellees contended that, through Black, the debtors filed the county commissioner complaint for the purpose of harassing, intimidating and forcing Bonnie Springs into reducing the property's purchase price. As for the nuisance claim, the appellees contended that the county commissioner's investigations and inspections of the ranch, instigated by Black, intentionally interfered with their use and enjoyment of the ranch.

The appellees moved for partial summary judgment on the property access issues ("property access motion"). The state court granted the property access motion, determining that the property was accessible by a public road. It further determined that the debtors, not Bonnie Springs, bore the "contractual burden" for any additional access required for the property.

The appellees also moved for partial summary judgment on the water rights issues ("water rights motion"). The state court granted the water rights motion. It determined that the agreement did not provide for any additional water rights for the debtors' proposed subdivision. The state court further determined that the agreement did not require Bonnie Springs to provide "notice" of water rights or any additional water for subsequent development of the property. It also determined that the debtors bore the burden to secure the water rights necessary for development of the property. The state court's determinations consequently disposed of the debtors' claims on the property access issues and water rights issues.

The state court concluded, however, that issues of genuine

5

material fact remained as to the appellees' abuse of process and nuisance claims, warranting a jury trial. The jury trial took place in March 2011.

At the time of the jury trial, the state court instructed the jury on the elements of abuse of process and nuisance. In the jury instructions, the state court stated that "[t]he elements required to establish the tort of abuse of process [were]: 1) an ulterior purpose by [the debtors] other than resolving a legal dispute, and 2) a willful act in the use of the legal process not proper in the regular conduct of the proceeding."

The state court explained that "an ulterior purpose" was "any improper motive underlying the issuance of legal process." It also explained that "a showing of malice and want of probable cause [was] not necessary to recover for abuse of process."

The state court stated that "[t]he elements required to establish the tort of nuisance [were]: 1) an intentional interference by [the debtors] with [the appellees'] use and comfortable enjoyment of life or property, and 2) the interference was both substantial and unreasonable."

The state court instructed the jury that if it found that the appellees "suffered damages as a proximate result of [the debtors' and LBI's] conduct, and upon which conduct [it] base[d] a finding of liability, [the jury] could consider whether [it] should award punitive or exemplary damages against [the debtors] for the sake of example and by way of punishment." The state court told the jury that it could award such damages in its discretion but only if it found "by clear and convincing evidence

6

that [the debtors] acted with oppression or malice in the conduct upon which [the jury] based [its] finding of liability."

The state court defined "oppression" as "subjecting a person to cruel and unjust hardship in conscious disregard of that person's rights." It defined "malice" as "conduct carried on by [the debtors] with a conscious disregard for the rights or safety of others." It further explained that "a person acts with conscious disregard of the rights or safety of others when he is aware of the probable dangerous consequences of his conduct and willfully and deliberately fails to avoid those consequences."

One month after the trial, the jury returned a verdict against the debtors for a total of $1.6 million in compensatory damages. It awarded $1.25 million against the debtors and LBI on the abuse of process claim and $350,000 against Black and LBI on the nuisance claim.

The jury also found that the debtors and LBI acted with oppression so as to justify a punitive damages award. It did not find that they acted with malice, however. The jury awarded a total of $2.275 million in punitive damages against LBI only. It did not award punitive damages against either debtor. However, as conceded by the debtors' counsel at oral argument, the jury's oppression findings applied to both the abuse of process and nuisance claims.

On May 5, 2011, the appellees submitted a proposed judgment, which the state court rejected because it contained a

typographical error.[4]

B.   Relief from Stay Motions

Later that same day, the debtors filed their respective chapter 7 bankruptcy petitions.[5]  Seven days later, the appellees submitted to the state court an amended state court judgment; the state court entered it on May 25, 2011.

The debtors filed a motion for sanctions for violation of the automatic stay ("stay violation motion").  After a hearing, the bankruptcy court granted the stay violation motion, finding the amended state court judgment void as to the debtors.  It denied the debtors' request for punitive damages, though it granted them attorney's fees until the time the appellees "[took] some action in state court to ensure that [the amended state court] judgment [did] not cover the debtors."  Tr. of July 19, 2011 hr'g, 23:9-11.

The bankruptcy court granted the stay violation motion without prejudice to any future efforts by the appellees "to seek relief from the automatic stay to resubmit the [amended state court judgment]."  A month later, it entered an order on the stay violation motion.

Shortly thereafter, the appellees filed a motion to annul the automatic stay to confirm entry of the amended state court judgment against the debtors ("stay annulment motion").  The

---

[4] The proposed state court judgment listed the punitive damages at $2.2 million, not $2.275 million.

[5] Black and his wife, Kelly Black, filed a joint chapter 7 petition.  The appellees only named Black and Chernine as defendants in the exception to discharge complaint.

bankruptcy court granted the stay annulment motion, allowing the state court to enter a final judgment against the debtors. It did not allow the appellees to seek an award of costs or attorney's fees against the debtors in the state court action. The bankruptcy court also permitted the debtors to appeal the state court judgment, if they chose to do so.

C.   Summary Judgment Motion

A month later, the appellees filed the exception to discharge complaint. The appellees alleged that the debtors "engag[ed] in a series of harassing measures aimed to intimidate [them] into renegotiating the purchase price on the [p]roperty." These "harassing measures" included initiating the state court action against the appellees and filing the county commissioner complaint. The appellees contended that these "harassing measures" constituted willful and malicious injuries within the meaning of § 523(a)(6). It therefore requested that the state court judgment be excepted from discharge under § 523(a)(6).

Two months after the debtors filed their answer to the exception to discharge complaint, the state court entered a second amended judgment ("final state court judgment"). It essentially confirmed the jury's determinations. The state court also expressly stated that the final state court judgment was a "final adjudication on all matters in this case, [and that] all rulings from this case [were] final."[6]

In January 2012, the appellees moved for summary judgment

---

[6] The debtors appealed the final state court judgment to the Nevada Supreme Court.

9

against the debtors ("summary judgment motion") in the adversary proceedings. They contended that the final state court judgment had issue preclusive effect because the debts that arose from it resulted from "willful and malicious injuries" within the meaning of § 523(a)(6). Specifically, the appellees argued that the nuisance and abuse of process claims, as set forth under Nevada law, met all of the elements for willful and malicious injury under § 523(a)(6).

The debtors responded to the summary judgment motion, arguing that issue preclusion did not apply. They conceded that 1) the final state court judgment was final and rendered on the merits, 2) the same parties were involved in the state court action and the adversary proceedings and 3) the issues had been actually and necessarily litigated in the state court action. The debtors also conceded that they acted willfully in committing abuse of process and nuisance against the appellees and that their actions were malicious.

The debtors argued, however, that the issues in the state court action and adversary proceedings were not identical. Specifically, they claimed that the element of willfulness for the abuse of process and nuisance claims under Nevada law was not identical to the element of willfulness under § 523(a)(6).

The debtors argued that, for the element of willfulness to be met under § 523(a)(6), a debtor must act with specific intent; i.e., the debtor must have intended to inflict the injury willfully. To establish willfulness for an abuse of process claim, however, the debtor must have had an ulterior purpose other than to resolve a legal dispute. "Ulterior purpose," the

10

debtors continued, could be any improper motive underlying the legal process, not simply the motive to inflict the injury. Likewise, a nuisance claim does not take into account the acting party's state of mind; it simply takes into account the degree of interference by the debtor.

The bankruptcy court held a hearing on the summary judgment motion ("summary judgment hearing"). It granted summary judgment in the appellees' favor, orally stating its legal analysis and conclusions.

The bankruptcy court noted at the summary judgment hearing that the debtors had conceded a number of points. It acknowledged that the only point in contention was whether the debtors not only intended to commit abuse of process and nuisance but that they "actually intended the consequences of [them]."

The bankruptcy court found the element of willfulness under the abuse of process claim was virtually the same as that under § 523(a)(6) because "[t]here was no good reason [for the debtors] to do the acts that led to the judgment for abuse of process and no reason to commit those acts other than to inflict an injury willfully upon [the appellees]." Tr. of February 8, 2012 hr'g, 25:21-24. It noted that the finding of oppression supported this conclusion because oppression required that the debtors' actions "[had] to subject a person to cruel and unjust hardship . . . [which] itself implies a mental state of an intent to injure." Tr. of February 8, 2012 hr'g, 26:15-17.

The bankruptcy court reasoned that "if [the debtors were] cruel, [they] necessarily intend[ed] to inflict some injury without just purpose or cause, and it's the same with unjust

11

hardship." Tr. of February 8, 2012 hr'g, 26:19-21. It determined that "[t]he unjust nature and the cruel nature [elements of oppression] buttress[ed] the notion that there [had] been an act that was done with the intent to injure willfully [the appellees] in this case." Tr. of February 8, 2012 hr'g, 26:22-24.

The bankruptcy court applied the same reasoning to the nuisance claim. It focused on the requirement that Black's interference with the appellees' use and enjoyment of the property had to be unreasonable. The bankruptcy court reasoned that "one doesn't do something unreasonably if there [was] not a concomitant and strong intent to injure willfully the other party." Tr. of February 8, 2012 hr'g, 27:8-10.

The bankruptcy court entered the summary judgment order on February 27, 2012. The debtors timely appealed.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(I). We have jurisdiction under 28 U.S.C. § 158.

## ISSUES

1) Did the bankruptcy court err in granting summary judgment in the appellees' favor by giving issue preclusive effect to the state court judgment?

2) Did the state court judgment for abuse of process satisfy the element of "willfulness" for an exception to discharge judgment under § 523(a)(6)?

12

3) Did the state court judgment for nuisance satisfy the element of "willfulness" for an exception to discharge judgment under § 523(a)(6)?

**STANDARDS OF REVIEW**

We review de novo the bankruptcy court's decision to grant summary judgment. Boyajian v. New Falls Corp. (In re Boyajian), 564 F.3d 1088, 1090 (9th Cir. 2009).

Viewing the evidence in the light most favorable to the nonmoving party, we must determine whether any genuine issues of material fact exist and whether the bankruptcy court correctly applied the relevant substantive law. CRM Collateral II, Inc. v. TriCounty Metro. Transp., 669 F.3d 963, 968 (9th Cir. 2012) (quoting Trunk v. City of San Diego, 629 F.3d 1099, 1105 (9th Cir. 2011)).

"We review de novo whether a particular type of debt is nondischargeable as a willful and malicious injury under § 523(a)(6)." Maaskant v. Peck (In re Peck), 295 B.R. 353, 360 (9th Cir. BAP 2003), quoting Tsurukawa v. Nikon Precision, Inc. (In re Tsurukawa), 258 B.R. 192, 195 (9th Cir. BAP 2001) (internal quotation marks omitted). See also Carrillo v. Su (In re Su), 290 F.3d 1140, 1142 (9th Cir. 2002) ("Whether a claim is nondischargeable presents mixed issues of law and fact and is reviewed de novo."). We review de novo a bankruptcy court's conclusions of law, id., and its interpretations of the Bankruptcy Code. See Nichols v. Birdsell, 491 F.3d 987, 989 (9th Cir. 2007).

We also review de novo the bankruptcy court's determination

13

that issue preclusion is available. See Miller v. County of Santa Cruz, 39 F.3d 1030, 1032 (9th Cir. 1994). If we conclude that issue preclusion is available, we review for abuse of discretion the bankruptcy court's decision giving issue preclusive effect to the state court's decisions. Id. We apply a two-part test to determine objectively whether the bankruptcy court abused its discretion. United States v. Hinkson, 585 F.3d 1247, 1261-62 (9th Cir. 2009) (en banc). First, we "determine de novo whether the trial court identified the correct legal rule to apply to the relief requested." Id. Second, we examine the bankruptcy court's factual findings under the clearly erroneous standard. Id. at 1262 & n.20.

We may affirm on any ground supported by the record. Shanks v. Dressel, 540 F.3d 1082, 1086 (9th Cir. 2008).

**DISCUSSION**

The debtors and the appellees agree that we need only resolve one question here. That question is this: Did the bankruptcy court correctly determine that "willfulness" for abuse of process and nuisance claims under Nevada law is congruent with "willfulness" under § 523(a)(6)?[7] We conclude that the bankruptcy court correctly determined that "willfulness" under an abuse of process claim was essentially the same as "willfulness"

---

[7] As the appellees point out, within the Ninth Circuit, we consider the requirements of "willfulness" and "maliciousness" separately. In re Su, 290 F.3d at 1146. We do not address the "maliciousness" element here, as the debtors concede that element has been met.

14

under § 523(a)(6). Our conclusion is the same with respect to the nuisance claim, as discussed below.

### A. Elements and Definitions under § 523(a)(6)

Before we begin our analysis, we must set forth the elements and their requirements under § 523(a)(6).

Section 523(a)(6) excepts from discharge debts arising from "willful and malicious" injury by the debtor to another person. For an injury to be willful, the debtor must have "a subjective motive to inflict the injury or [a subjective belief] that injury was substantially certain to occur as a result of his conduct." Petralia v. Jercich (In re Jercich), 238 F.3d 1202, 1208 (9th Cir. 2001) (emphasis in original). See also In re Su, 290 F.3d at 1142.

In other words, "[a] willful injury is a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury." Barboza v. New Form, Inc. (In re Barboza), 545 F.3d 702, 706 (9th Cir. 2008) (quoting Kawaauhau v. Geiger, 523 U.S. 57, 61 (1998)) (internal quotation marks omitted, emphasis in original). As established by In re Su, "courts within the Ninth Circuit use a subjective approach in determining willfulness, i.e., they look to whether the debtor acted with the desire to injure or a belief that injury was substantially certain to occur." Partow v. Turner (In re Partow), 2009 WL 7751420, at *6 (9th Cir. BAP Feb. 10, 2009).

Keeping these standards and definitions in mind, we now turn to the issues at hand.

///

15

B.  Issue Preclusive Effect of State Court Judgment

Issue preclusion applies in exception to discharge proceedings. Grogan v. Garner, 498 U.S. 279, 284 n.11 (1991). As required under 28 U.S.C. § 1738, the Full Faith and Credit Act, we apply Nevada's issue preclusion law to determine the issue preclusive effect of the final state court judgment. Harmon v. Kobrin (In re Harmon), 250 F.3d 1240, 1245 (9th Cir. 2001).

Nevada uses a four-part test in determining whether issue preclusion applies: "(1) the issue decided in the prior litigation must be identical to the issue presented in the current action; (2) the initial ruling must have been on the merits and have become final; (3) the party against whom the judgment is asserted must have been a party or in privity with a party to the prior litigation; and (4) the issue was actually and necessarily litigated." Five Star Capital Corp. v. Ruby, 194 P.3d 709, 713 (Nev. 2008) (quoting Univ. of Nevada v. Tarkanian, 879 P.2d 1180, 1191 (Nev. 1994)) (internal quotation marks omitted).

The debtors argue that the bankruptcy court improperly granted the summary judgment motion by giving issue preclusive effect to the final state court judgment. But they only challenge the bankruptcy court's application of the first element of issue preclusion. They contend that, contrary to the bankruptcy court's determination, willfulness for purposes of abuse of process and nuisance claims under Nevada law is not the same as willfulness under § 523(a)(6).

///

16

### 1. Willfulness under Abuse of Process Claims

In Nevada, the elements of an abuse of process claim are "(1) an ulterior purpose by the defendants other than resolving a legal dispute, and (2) a willful act in the use of the legal process not proper in the regular conduct of the proceeding." LaMantia v. Redisi, 38 P.3d 877, 879 (Nev. 2002). "An ulterior purpose is any improper motive underlying the issuance of legal process." Posadas v. City of Reno, 851 P.2d 438, 445 (Nev. 1993). It is not necessary to show malice or want of probable cause to recover for abuse of process. Id.

The debtors argue that "willfulness" under an abuse of process claim involves a person's "ulterior purpose," which is not the same as a "subjective motive to injure" or "belief that injury was substantially certain to occur" under § 523(a)(6). An ulterior motive can be any improper motive, they contend, not necessarily a motive to inflict injury.

As the appellees note, the debtors are attempting to separate the conduct of abuse of process from the injury of abuse of process. But the tort of abuse of process does not make such a distinction. Under Nevada law, the filing of a complaint itself does not constitute an abuse of process. Laxalt v. McClatchy, 622 F.Supp. 737, 752 (D. Nev. 1985). Rather, it is "the action[] which the [filer takes] (or fail[s] to take) after the filing of the complaint" that constitutes abuse of process. Id. (emphasis in original). "[T]he gist of the tort [of abuse of process] is . . . misusing or misapplying process justified in itself for an end other than that which it was designed to accomplish." Id. at 751 n.3 (quoting Prosser, Law of Torts 856

17

(4th ed. 1971)). See also Nev. Credit Rating Bureau, Inc. v. Williams, 503 P.2d 9, 12 (Nev. 1972) ("The action for abuse of process hinges on the misuse of regularly issued process . . . .") (emphasis added).

Here, as the bankruptcy court pointed out, there was no good reason for the debtors to commit the acts that resulted in the abuse of process judgment. The debtors' actions before and after filing the county commissioner complaint reveal their intent to injure the appellees by abusing process. For example, before they filed the county commissioner complaint, the debtors attempted to renegotiate a lower purchase price for the property. They also tried to sell the property, even though they had not made the extension payment and did not own it. Additionally, after they filed the county commissioner complaint, the debtors initiated the state court action against the appellees. Given their actions, the debtors clearly misused the county commissioner complaint for an end other than to investigate and inspect environmental issues and health code violations; they used it in an attempt to strong-arm Bonnie Springs into renegotiating the purchase price for the property. See Laxalt, 622 F. Supp. at 752 (citing examples "of abusive measures taken after the filing of the complaint, such as minimal settlement offers or huge batteries of motions filed solely for the purpose of coercing a settlement") (emphasis added).

The bankruptcy court determined that the state court's finding of oppression further supported a finding of willfulness under § 523(a)(6). It focused on the "cruel and unjust hardship" portion of oppression, reasoning that, in subjecting the

18

appellees to "cruel and unjust hardship," the debtors necessarily intended to inflict injury on it. The adjective "cruel" has been variously defined as "willfully or knowingly causing pain or distress to others," http://dictionary.reference.com, "disposed to inflict pain or suffering: devoid of humane feelings," http://www.merriam-webster.com/dictionary, and "disposed to inflict pain or suffering," http://www.thefreedictionary.com. A finding of oppression requires that a person act with conscious disregard of another person's rights or safety and with awareness of the probable dangerous consequences of his conduct. As debtors point out, "probable" is not necessarily the same as "substantial certainty," as discussed in In re Jercich. However, we agree with the bankruptcy court that "subjecting a person to cruel and unjust hardship in conscious disregard of that person's rights" supports a determination of subjective intent to injure in the context of an abuse of process claim.

The bankruptcy court correctly determined that "ulterior purpose" under an abuse of process claim equates with "willfulness" under § 523(a)(6). It properly gave issue preclusive effect to the state court judgment on the abuse of process claim. We therefore determine that the bankruptcy court did not err in granting summary judgment on the abuse of process portion of the appellees' § 523(a)(6) claim.

2. Willfulness under Nuisance Claim

In Nevada, "[a]n actionable nuisance is an intentional interference with the use and enjoyment of land that is both substantial and unreasonable." Culley v. County of Elko, 711 P.2d 864, 866 (Nev. 1985) (emphasis added) (citing Jezowski v.

19

City of Reno, 286 P.2d 257 (Nev. 1955)). A nuisance is "such unreasonable, unwarrantable or unlawful use by a person of his own property, or his improper, indecent or unlawful conduct which operates as an obstruction or injury to the right of another or to the public and produces such material annoyance, inconvenience, discomfort or hurt that the law will presume a consequent damage." Jezowski, 286 P.2d at 260-61 (emphasis in original) (citing Bliss v. Grayson, 56 P. 231, 240 (Nev. 1899)).

However, the state court's jury instruction with respect to the nuisance claim focused, consistent with Culley, on Black's "substantial and unreasonable intentional interference with [the appellees'] use and enjoyment of their land," 711 P.2d at 866 (emphasis added):

> The elements required to establish the tort of nuisance are: 1) an intentional interference by [Black] with [the appellees'] use and comfortable enjoyment of life or property, and 2) the interference was both substantial and unreasonable. (Emphasis added.)

Jury Instruction no. 19.

Coupled with the overlay of the oppression finding, adding an element of subjective cruelty to the jury's necessary nuisance finding that Black directed his interference specifically at the appellees' use and enjoyment of their property, we conclude that the bankruptcy court did not err in determining that summary judgment was appropriate on the nuisance portion of the appellees' § 523(a)(6) claim against Black.

## CONCLUSION

The bankruptcy court correctly determined that the final state court judgment on the abuse of process claim had issue

20

preclusive effect to except it from discharge under § 523(a)(6). We conclude that "willfulness" for purposes of an abuse of process claim is consistent with willfulness for purposes of § 523(a)(6) in the context of this case. We conclude the same with respect to the appellees' nuisance judgment against Black. Accordingly, we AFFIRM the bankruptcy court's summary judgment order.