FILED

JUN 19 2020

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

**ORDERED PUBLISHED**

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

In re:

CHAD PAUL DELANNOY,

               Debtor.

_____

CHAD PAUL DELANNOY,

               Appellant,

v.

WOODLAWN COLONIAL, L.P., a
California Limited Partnership,

               Appellee.

BAP No. CC-19-1230-TaFS

Bk. No. 8:17-bk-10423-ES

Adv. No. 8:17-bk-01073-ES

**OPINION**

Appeal from the United States Bankruptcy Court
for the Central District of California
Honorable Erithe A. Smith, Bankruptcy Judge, Presiding

APPEARANCES:

Charity J. Manee of Goe & Forsythe, LLP argued for appellant; Howard M. Bidna of Bidna & Keys, APLC, argued for appellee.

Before: TAYLOR, FARIS, AND SPRAKER, Bankruptcy Judges.

TAYLOR, Bankruptcy Judge:

## INTRODUCTION

Chad Paul Delannoy lost his position as captain of the luxury yacht *Alessa Leigh* when his employer discovered his acts of theft; this led to criminal charges and an adverse civil judgment based on conversion. While his appeal of the judgment was pending, he filed a chapter 7[1] bankruptcy. The Trustee promptly seized the helm in his appeal. Delannoy was no longer the master of his appellate fate.

Over Delannoy's objection, the Trustee sold Delannoy's appeal rights to his adversary, Woodlawn Colonial, L.P. ("Woodlawn"), which then dismissed the appeal to render the judgment final. The bankruptcy court determined that the then-final judgment was issue preclusive as to Woodlawn's § 523(a)(6) claim and granted Woodlawn summary judgment. Delannoy appealed. We AFFIRM.

We publish this decision primarily to dispel any misconception regarding what a creditor is purchasing when it buys a chapter 7 debtor's right to appeal a California judgment. The creditor is not securing certain victory in asserting the preclusive effect of the judgment in a nondischargeability action. At most, the creditor is purchasing the

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, all "Rule" references are to the Federal Rules of Bankruptcy Procedure, and all "Civil Rule" references are to the Federal Rules of Civil Procedure.

possibility of obtaining the finality of the judgment necessary to then argue that issue preclusion could and should apply. The creditor must prove that all elements of issue preclusion are met. And the application of issue preclusion remains a discretionary decision by the bankruptcy court based on a public policy analysis.

## FACTS[2]

**The Prepetition State Court Proceedings**

### The State Court Trial

Prepetition, Delannoy's employer, Alessa Leigh LLC, and its member, R. Scott Bell ("Plaintiffs"), sued Delannoy for conversion and money had and received under California law. Plaintiffs' conversion claim allegations, including the last allegation that Delannoy's acts "were willful, malicious, and oppressive and were undertaken with the intent to cause injury and damage to Plaintiffs, therefore justifying an award of exemplary and punitive damages," were incorporated in their money had and received claim.

After commencement of the civil suit, Delannoy pleaded guilty to Cal. Penal Code § 487(a) grand theft and admitted that he unlawfully and

---

[2] We heavily borrow from our decision, *Delannoy v. Woodlawn Colonial, L.P. (In re Delannoy)*, BAP No. CC-17-1334-SKuL, 2018 WL 4190874 (9th Cir. BAP Aug. 31, 2018) ("*Delannoy I*"). We take judicial notice of documents filed in *Delannoy I*, the appeal therefrom (No. 18-60057), the bankruptcy case, and the adversary proceeding. *Atwood v. Chase Manhattan Mortg. Co. (In re Atwood)*, 293 B.R. 227, 233 n.9 (9th Cir. BAP 2003).

fraudulently appropriated, converted, stole, and embezzled Bell's property. But at the civil trial, he denied taking Plaintiffs' property. The state court found his testimony not credible and, at times, evasive. It also accepted his admission that he made checks payable to cash drawn on Plaintiffs' bank accounts and deposited those checks in his personal bank account. The trial record well supports the state court's conclusion that Delannoy was liable on both theories of recovery.

**The Tentative Statement of Decision**

After trial, the state court first entered a tentative statement of decision ("TSOD"). It held Delannoy liable for $59,550.07 for the value of the converted personal property other than cash plus pre-judgment interest. As for the cash he took, the state court noted that "[m]oney cannot be the subject of a cause of action for conversion unless there is a specific, identifiable amount involved" and stated that "[h]ere, identifiable amounts are involved." Thus, it additionally held Delannoy liable for $722,530 for the value of "converted" cash and prejudgment interest. Finally, it found, by clear and convincing evidence, that Delannoy's takings were "done with fraud, if not malice," and concluded that punitive damages and a second stage of the trial would be appropriate.

**The Minute Order**

After the punitive damages trial, the state court issued a minute order ("Minute Order"), awarding Plaintiffs $60,000 in punitive damages

4

under Cal. Civ. Code § 3294 based on its finding that Delannoy acted with fraud, malice, and an intent to cause economic injury. It reiterated that its $59,550.07 award was "on the conversion cause of action." Then, after reciting the elements for a money had and received claim, it clarified that "[i]t was under this theory of recovery that the Court intended to award the cash plus prejudgment interest. Since judgment has not been entered yet, the Court may correct or clarify its [TSOD] accordingly, and now does so." The Minute Order directed Plaintiffs' counsel to prepare the judgment.

### The State Court Judgment and the Appeal

The state court entered judgment against Delannoy ("Judgment") consistent with the TSOD and Minute Order in all but two respects: (1) it described the converted property as inclusive of the cash taken by Delannoy; and (2) it provided that Delannoy shall pay Alessa Leigh LLC damages for the cash taken under both the conversion and money had and received theories of recovery. The state court handwrote on the Judgment that "[t]he court notes that no objections to proposed judgment were filed." The Judgment was assigned to Woodlawn and appealed by Delannoy ("State Court Appeal").

## The Postpetition Proceedings

### The Sale of Delannoy's State Court Appeal Rights and the Conclusion of the State Court Appeal

Before the conclusion of the State Court Appeal, Delannoy

commenced his chapter 7 case. Woodlawn responded with a nondischargeability complaint seeking to have the Judgment debt excepted from discharge under §§ 523(a)(2), (4), and (6). Delannoy answered and counterclaimed for damages for alleged automatic stay violations.

And Woodlawn capitalized on an advantage arising directly from Delannoy's decision to file a chapter 7 case; the Trustee filed a motion to sell Delannoy's appeal rights ("Appeal Rights") to Woodlawn for $7,500, subject to overbid. In addition to analyzing the sale of the Appeal Rights to Woodland under § 363, the Trustee analyzed it as a Rule 9019 compromise. He maintained it was a fair and reasonable settlement and that a successful prosecution of the State Court Appeal was highly unlikely.

Delannoy opposed the sale. Not surprisingly, he expressed a more optimistic view of his chances in the State Court Appeal and alleged, among other things, that the sale would be used to terminate his State Court Appeal. Thus, he contended that it amounted to an impermissible waiver of his right to a discharge in violation of § 524(c). He also filed a motion to compel abandonment of the Appeal Rights.

The overbid auction of the Appeal Rights resulted in their sale to Woodlawn for $10,000. Delannoy all but discarded his abandonment motion and instead participated as a bidder. In the process of approving the sale, the bankruptcy court twice referred to the State Court Appeal as a "longshot." It also described Delannoy's chance of completely prevailing as

"probably highly unlikely."

It then entered an order authorizing the sale, which expressly authorized Woodlawn to dismiss the State Court Appeal.[3]

Delannoy appealed the order, and we affirmed.[4] At no point in that appeal did he challenge the bankruptcy court's finding that his chances in the State Court Appeal were a "longshot."

**The Dismissal of the State Court Appeal**

Thereafter, in the State Court Appeal, the California Court of Appeal added Woodlawn as the "appellant," dismissed the appeal pursuant to Woodlawn's request, and issued a remittitur deeming the Judgment final.

**The Nondischargeable Judgment**

Woodlawn then filed a motion for summary judgment or summary adjudication on its nondischargeability complaint based on the preclusive effect of the now final Judgment. Delannoy opposed and contended that summary adjudication on the § 523(a)(6) claim would be improper because, he argued, the state court erred in awarding Plaintiffs damages for cash taken under both of Plaintiffs' theories of recovery—rather than only under the money had and received theory—per the Minute Order.

At the hearing on Woodland's motion, among other things, the

---

[3] The bankruptcy court also entered an order denying the abandonment motion, which Delannoy did not appeal.

[4] Delannoy appealed to the Ninth Circuit. That appeal is pending without a stay.

7

bankruptcy court took judicial notice of the TSOD, Minute Order, and Judgment but stated that, in determining the actual ruling of the state court, it relied on the Judgment and considered the TSOD and Minute Order solely for the purpose of determining whether or not particular issues had been litigated. Under this framework, the bankruptcy court denied summary judgment on Woodlawn's §§ 523(a)(2) and (4) claims but determined that the entire Judgment was nondischargeable under § 523(a)(6). It relied on the Judgment's findings of conversion and fraud and malice in support of the punitive damages award.

In so ruling, it rejected Delannoy's argument that the Judgment could not be given preclusive effect due to its deviations from the Minute Order. It emphasized that it had no reason to believe that the state court was in error; the state court had apparently reviewed the Judgment as evidenced by its handwritten notation thereon. The bankruptcy court also rejected Delannoy's argument that Woodlawn's purchase of his Appeal Rights destroyed the privity necessary to apply issue preclusion.

The bankruptcy court entered its order granting Woodlawn summary adjudication as to its § 523(a)(6) claim and later, pursuant to Woodlawn's motion, entered an order dismissing Woodlawn's §§ 523(a)(2) and (4) claims and certifying under Civil Rule 54(b) that there was no just reason for delay in entering judgment on Woodlawn's § 523(a)(6) claim.[5]

The bankruptcy court then entered its judgment excepting from

---

[5] The counterclaim for alleged stay violations remained pending.

8

Delannoy's discharge the amount of $846,089.65, together with post-judgment interest, under § 523(a)(6). Delannoy timely appealed.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(I). We have jurisdiction under 28 U.S.C. § 158, notwithstanding that the bankruptcy court's judgment did not adjudicate all of the claims, because the bankruptcy court certified that there was no just reason to delay entry of judgment on Woodlawn's § 523(a)(6) claim under Civil Rule 54(b) and because Delannoy's remaining counterclaim would not require an appellate court to re-examine the issues and facts supporting judgment on Woodlawn's § 523(a)(6) claim. *See Cutter v. Seror (In re Cutter)*, 398 B.R. 6, 16 (9th Cir. BAP 2008), *aff'd*, 468 F. App'x 657 (9th Cir. 2011).

## ISSUE

Did the bankruptcy court err in granting summary judgment on Woodlawn's § 523(a)(6) claim based on issue preclusion?

## STANDARDS OF REVIEW

We review *de novo* a bankruptcy court's grant of summary judgment and exception of a debt from discharge under § 523. *See Black v. Bonnie Springs Family Ltd. P'ship (In re Black)*, 487 B.R. 202, 210 (9th Cir. BAP 2013).

We also review *de novo* a bankruptcy court's determination that issue preclusion is available. *Id.* If issue preclusion is available, we review its application for an abuse of discretion. *Id.* A bankruptcy court abuses its

9

discretion if it applies the wrong legal standard, misapplies the correct legal standard, or its factual findings are illogical, implausible, or without support in inferences that may be drawn from the facts in the record. *See TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 832 (9th Cir. 2011).

We may affirm on any basis supported by the record. *In re Black*, 487 B.R. at 211.

## DISCUSSION

Summary judgment is appropriate when the pleadings and supplemental materials show that there is no genuine issue as to any material fact on the claims and the moving party is entitled to judgment as a matter of law. *Roussos v. Michaelides (In re Roussos)*, 251 B.R. 86, 91 (9th Cir. BAP 2000). A properly-supported summary judgment motion cannot be defeated by the mere existence of some alleged factual dispute. *Id.* The requirement is that there be no genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Only disputes over facts that might affect the outcome of the lawsuit may defeat a summary judgment motion. *Id.* at 248.

The bankruptcy court may grant summary judgment in a dischargeability proceeding based on the issue preclusive effect of a judgment. *See Grogan v. Garner*, 498 U.S. 279, 284-85 & n.11 (1991). It "must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was

rendered." *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984).

In California, issue preclusion prevents a party from re-litigating a previously decided issue in a second suit if: (1) the issue is identical to that decided in the first suit; (2) the issue was actually litigated in the first suit; (3) the issue was necessarily decided in the first suit; (4) the decision in the first suit is final and on the merits; and (5) the party is the same as, or in privity with, the party to the first suit. *Lucido v. Super. Ct.*, 51 Cal. 3d 335, 341(1990). Even if these five requirements are met, its application must be consistent with the public policies of "preservation of the integrity of the judicial system, promotion of judicial economy, and protection of litigants from harassment by vexatious litigation." *Id.* at 343.

The party asserting issue preclusion must prove all the criteria for its application by introducing a record sufficient to reveal the controlling facts and the exact issues litigated in the first suit. *Kelly v. Okoye (In re Kelly)*, 182 B.R. 255, 258 (9th Cir. BAP 1995). Reasonable doubt as to what was decided in the first suit will weigh against applying issue preclusion. *Id.*

Delannoy asserts that none of the six criteria for issue preclusion exist. He argues that the identical issues were not actually litigated and necessarily decided by the state court because Plaintiffs' claims did not require proof of intent to harm and their money had and received claim was not an intentional tort. He argues that the Judgment was neither on the merits nor obtained by a party in privity with him because his adversary

11

purchased his Appeal Rights and dismissed the State Court Appeal to render the Judgment final. And he argues that the bankruptcy court erred in failing to engage in a public policy analysis. We disagree.

**A. We find no reversible error in the bankruptcy court's failure to conduct a public policy analysis.**

Even where the five threshold criteria for issue preclusion are met, a bankruptcy court must conduct an "inquiry into whether imposition of issue preclusion in the particular setting would be fair and consistent with sound public policy" before applying issue preclusion. *Khaligh v. Hadaegh (In re Khaligh)*, 338 B.R. 817, 824-25 (9th Cir. BAP 2006), *aff'd*, 506 F.3d 956 (9th Cir. 2007). Three fundamental policies should be considered: "preservation of the integrity of the judicial system, promotion of judicial economy, and protection of litigants from harassment by vexatious litigation." *Lucido*, 51 Cal. 3d at 343. A bankruptcy court's decision to apply issue preclusion ultimately is a discretionary matter, turning on whether its application is consistent with these policies. *Id.* at 343-44.

Delannoy argues that (1) the bankruptcy court erred by not explicitly assessing whether the application of issue preclusion was consistent with public policy; and (2) the application was not consistent with public policy because he could not prosecute his State Court Appeal. We agree that the record does not reflect that the bankruptcy court explicitly conducted a public policy inquiry directly in connection with Woodlawn's summary

12

judgment motion. But we do not perceive this oversight as reversible error because we can do so in the first instance given that the record allows a complete understanding of these issues. *Swanson v. Levy*, 509 F.2d 859, 861 (9th Cir. 1975). And we conclude that the application of issue preclusion did not contravene public policy.

In discussing public policy, Woodlawn overstates the import of the bankruptcy court's sale and compromise order and our affirmance of the order in *Delannoy I*. Specifically, it posits that the order—so far upheld on appeal—conclusively established that the application of issue preclusion is consistent with public policy pursuant to the "law of the case" doctrine.

We disagree. "Under the 'law of the case' doctrine, a court is ordinarily precluded from reexamining an issue previously decided by the same court, or a higher court, in the same case." *Richardson v. United States*, 841 F.2d 993, 996 (9th Cir. 1988) (citations omitted), *amended*, 860 F.2d 357 (9th Cir. 1988). For the doctrine to apply, "the issue in question must have been decided explicitly or by necessary implication in the previous disposition." *United States v. Lummi Indian Tribe*, 235 F.3d 443, 452 (9th Cir. 2000) (internal quotation marks and citation omitted). We reject the notion that the sale and compromise order or *Delannoy I* resolved, either explicitly or by necessary implication, whether issue preclusion could or should apply.

In approving the sale and compromise, the bankruptcy was not

13

obliged to consider the effect of a transfer of the Appeal Rights to Woodlawn on its nondischargeability claims. Neither were we so obliged in our review of the sale and compromise order. Approval of the sale hinged on whether the Trustee proposed the sale in good faith and for a proper purpose, the sale was in the best interests of the estate, and the sale yielded optimal value for the estate under the circumstances. *See Simantob v. Claims Prosecutor, LLC (In re Lahijani)*, 325 B.R. 282, 288 (9th Cir. BAP 2005); *240 N. Brand Partners, Ltd. v. Colony GFP Partners, L.P. (In re 240 N. Brand Partners, Ltd.)*, 200 B.R. 653, 658 (9th Cir. BAP 1996). And approval of the compromise depended on whether the compromise was fair and equitable after consideration of the probability of success in the State Court Appeal, the difficulties in collection, the complexity, expense, inconvenience, and delay in prosecuting the appeal, and the paramount interest of creditors. *Goodwin v. Mickey Thompson Entm't Grp., Inc. (In re Mickey Thompson Entm't Grp., Inc.)*, 292 B.R. 415, 420 (9th Cir. BAP 2003).

To the extent that either the bankruptcy court or we considered the effect of the sale and compromise on the availability of issue preclusion in the nondischargeability action, such consideration occurred within the context of assessing the value of the sale and compromise to the estate and addressing Delannoy's assertion that the sale would impermissibly waive his right to a discharge. Neither the bankruptcy court's order nor our *Delannoy I* decision determined that Woodlawn would be able to

14

successfully assert issue preclusion as a consequence of its purchase of the Appeal Rights. That remained an open issue until the bankruptcy court adjudicated Woodlawn's summary judgment motion. At most, Woodlawn purchased the possibility of obtaining the finality necessary to then argue that issue preclusion could and should apply. It did not secure certain victory in asserting issue preclusion.

Delannoy likewise overstates the import of the sale and compromise order. He argues that the judicial system's integrity is harmed when a party of means, such as Woodlawn, can purchase its desired result in litigation, rather than by "full and fair" litigation on the merits. But, that is not what happened here. Delannoy defended against Plaintiffs' claims in state court up until the adverse Judgment was entered. Rather than prosecute his State Court Appeal to completion, he voluntarily filed a chapter 7 bankruptcy, thereby relinquishing his Appeal Rights to the Trustee. Woodlawn then purchased the Appeal Rights through a judicially supervised bankruptcy sale. This process was neither improper nor unfair; it did not call into question the judicial system's integrity.

As for judicial economy, application of issue preclusion would prevent the unnecessary retrial of issues already fully and finally determined by the state trial court. *Baldwin v. Kilpatrick (In re Baldwin)*, 249 F.3d 912, 920 (9th Cir. 2001).

Finally, with respect to the protection of parties from vexatious

15

litigation, Delannoy has not shown that he was denied a full and fair opportunity to litigate the issues in state court. Rather, he simply disagrees with the outcome and would like another chance to re-litigate the issues. And, importantly, in the process of granting the Trustee's sale and compromise motion, the bankruptcy court referred to the State Court Appeal as a "longshot" and described his chance of prevailing as "probably highly unlikely." It would have been unfair to Woodlawn to require it to re-litigate the willful and malicious injury issues in the bankruptcy court when Plaintiffs had already successfully done so in state court and the State Court Appeal likely had little or no merit. *Id.*

Accordingly, we find there is substantial evidence in the record demonstrating that application of issue preclusion on the facts before the bankruptcy court was consistent with sound and fair public policy.

**B. The issues were identical.**

Issue preclusion requires a comparison of the issues presented in the bankruptcy case and in the state court action. The bankruptcy court held that the Judgment constituted a nondischargeable debt under § 523(a)(6), which exempts from discharge a debt "for willful and malicious injury by the debtor to another entity or to the property of another entity." § 523(a)(6).

The "willful" injury and "malicious" injury requirements of § 523(a)(6) are separate and distinct from one another. *Ormsby v. First Am.*

*Title Co. of Nev. (In re Ormsby)*, 591 F.3d 1199, 1206 (9th Cir. 2010). The "willful injury requirement is met only when the debtor has a subjective motive to inflict injury or when the debtor believes that injury is substantially certain to result from his own conduct." *Carrillo v. Su (In re Su)*, 290 F.3d 1140, 1142 (9th Cir. 2002). "A 'malicious' injury involves '(1) a wrongful act, (2) done intentionally, (3) which necessarily causes injury, and (4) is done without just cause or excuse.'" *Id.* at 1146-47 (quoting *Petralia v. Jercich (In re Jercich)*, 238 F.3d 1202, 1209 (9th Cir. 2001)).

Debts incurred by conversion of another's property may qualify as nondischargeable under § 523(a)(6). *Del Bino v. Bailey (In re Bailey)*, 197 F.3d 997, 1000 (9th Cir. 1999)."A conversion, under California law, establishes the debtor's wrongful exercise of dominion over the personal property of another, but it does not necessarily decide the type of wrongful intent on the part of the debtor that is necessary for the damages to be a nondischargeable debt under § 523(a)(6)." *Thiara v. Spycher Bros. (In re Thiara)*, 285 B.R. 420, 429 (9th Cir. BAP 2002) (internal citations and quotation marks omitted). Thus, a debt for conversion under California law is excepted from discharge under § 523(a)(6) only if the injury was willful and malicious. *Id.* at 427.

In this case, the Judgment awarded all compensatory damages "for conversion." While the Judgment did not include the words "willful" or "malicious" to describe the conversion, the punitive damages

17

award—which was necessarily requested and predicated on Delannoy's conversion[6]—was supported by the requisite findings of intent to cause injury and satisfied the willful and malicious injury requirements of § 523(a)(6). It was based on findings that Delannoy took Plaintiffs' cash and other personal property with fraud, malice, and an intent to cause economic injury, and that Delannoy's "acts showed a pattern or practice, and involved trickery and/or deceit." Such language collectively demonstrates that Delannoy's conversion constituted a willful and malicious injury under § 523(a)(6).[7]

The bankruptcy court did not err in finding an identity of issues.

## C. The issues were actually litigated.

Neither did it err in finding that the issues were actually litigated. Under California law, "an issue was actually litigated in a prior proceeding if it was properly raised, submitted for determination, and determined in

---

[6] Punitive damages were not recoverable on Plaintiffs' alternative money had and received claim. *Steiner v. Rowley*, 35 Cal. 2d 713, 720 (1950).

[7] In analyzing the "identity of issues" criterion for issue preclusion, we need not decide whether Plaintiffs' money had and received claim entailed the same issues as those underlying a § 523(a)(6) claim because all damages awarded by the state court either exclusively or alternatively arose from and related to Delannoy's conversion of Plaintiffs' property. And, while we need not, and do not, decide the issue, we observe that there may be an identity of issues stemming from the quasi-contractual money had and received claim. A debt resulting from an intentional breach of contract claim accompanied by tortious conduct that results in willful and malicious injury is excepted from discharge under § 523(a)(6). *In re Jercich*, 238 F.3d at 1205.

that proceeding." *Hernandez v. City of Pomona*, 46 Cal. 4th 501, 511 (2009) (citations omitted). Delannoy argues that his intent to harm was not actually litigated because it was not clearly raised in the pleadings. Not so. Plaintiffs alleged in both their claims that his acts were "willful, malicious, and oppressive and were undertaken with the intent to cause injury and damage to Plaintiffs, therefore justifying an award of exemplary and punitive damages."

## D. The issues were necessarily decided.

Delannoy also contests that the issue of his conversion of Plaintiffs' cash was necessarily decided because the damages award for the cash he took from Plaintiffs is based on determinations of both conversion and money had and received, either of which standing independently would be sufficient to support the result. And he claims that a judgment for money had and received cannot satisfy a § 523(a)(6) claim.[8] He cites to Comment *i* to the Restatement (Second) of Judgments § 27 (Am. Law Inst. 1982) ("Comment *I*") in support, which states that "[i]f a judgment of a court of first instance is based on determinations of two issues, either of which standing independently would be sufficient to support the result, the judgment is not conclusive with respect to either issue standing alone." We

---

[8] As we noted *supra*, the money had and received findings may match the elements of a § 523(a)(6) claim. To the extent they do, Delannoy's argument here is utterly lacking.

disagree for a number of reasons.

First, it is not clear that California courts follow Comment *I*. *See Flying J, Inc. v. Pistacchio*, No. CV-F-03-6706 OWW/GSA, 2008 WL 906396, at *42 (E.D. Cal. Mar. 31, 2008), *aff'd*, 351 F. App'x. 236 (9th Cir. 2009) ("Independent research reveals no reported California decision discussing or applying comment *i* to Section 27."); *Zevnik v. Super. Ct.*, 159 Cal. App. 4th 76, 83 (2008) ("We have found no California opinion on point dated after the Restatement Second."). In fact, when given the opportunity to clarify whether California follows Comment *I*, the Supreme Court of California expressly "caution[ed]... that [it takes] no position on the significance of an independently sufficient alternative ground reached by the trial court and *not* challenged on appeal." *Samara v. Matar*, 5 Cal. 5th 322, 337 (2018). It did so after commenting that "[c]ourts have understood the necessarily decided prong to require only that the issue not have been entirely unnecessary to the judgment in the initial proceeding—leaving room for a decision based on two grounds to be preclusive as to both." *Id.* at 327 (internal quotation marks and citation omitted).

Second, before the Restatement was adopted, California courts followed a different rule set forth in Comment *n* to Restatement (First) of Judgments § 68 (Am. Law Inst. 1942), which provided that issue preclusion could bar re-litigation of an issue when a judgment is based on alternative grounds. *See, e.g., Evans v. Horton*, 115 Cal. App. 2d 281 (1953).

Third, even if California courts embrace Comment *I*, one of its rationales is that "a determination in the alternative may not have been as carefully or rigorously considered as it would have if it had been necessary to the result, and in that sense it has some of the characteristics of dicta." *See* Comment *I*, illus. 15. It does not necessarily address a scenario where one set of facts supports liability under multiple claims. Here, the state court found a unitary set of facts that supported two claims, each premised on Delannoy's takings done with fraud and intentional malice. Thus, the Judgment should be given preclusive effect even if California courts embrace Comment *I*.

Fourth, one of Comment *I*'s rationales is that "a determination in the alternative may not have been as carefully or rigorously considered as it would have if it had been necessary to the result, and in that sense it has some of the characteristics of dicta." Comment *I*. And it acknowledges that "there may be causes where" alternative grounds may be given preclusive effect "because of the fullness with which the issue was litigated and decided in the first action." *Id.* Such is the case here because the two claims relied on identical factual predicates. Thus, Delannoy had incentive and opportunity to fully litigate the issues at trial.

**E. The issues were decided on the merits**.

Delannoy contends that the bankruptcy court erred in concluding that the Judgment was final and on the merits because it "evaded appellate

21

review" when Woodlawn purchased his Appeal Rights to dismiss the State Court Appeal. He relies on a California Supreme Court decision, *Samara*, 5 Cal. 5th 322. But *Samara* provides no basis for reversal.

In *Samara*, the court held that when a trial court has ruled against a party on alternative grounds and an appellate court affirms the judgment on one ground without reviewing the merits of the alternative ground, the judgment does not have preclusive effect in a subsequent action that is based on the unreviewed ground. In that situation, the "preclusive effect of the judgment should be evaluated as though the trial court had not relied on the unreviewed ground." *Id.* at 326.

Delannoy wishes us to conclude from *Samara* that whenever an appellate court does not hear and decide the merits of a debtor's appeal of a judgment based on alternative grounds, the judgment is not final and on the merits for issue preclusion purposes. But that is not the holding in *Samara*. Although the procedural setting in the present case materially diverges from the situation in *Samara*, the court's rationale is instructive:

> [t]he availability of a direct appeal reflects a sensible determination that the process culminating in a trial court's disputed decision is not sufficient to resolve litigation conclusively. *Of course, a litigant's ability to secure appellate review may be waived or forfeited*, as when a litigant fails to file a timely notice of appeal or fails to make an objection in the trial court. But when a litigant properly seeks appellate review of a ground underlying a trial court's determination, the fortuity that the judgment may be sustained on some other ground should not

imbue the challenged ground with final and conclusive effect. The challenged ground is no more reliable—no more deserving of finality—merely because it need not be evaluated to resolve the appeal.

*Id.* at 333 (emphasis added).

Delannoy timely appealed the Judgment, objected to the Trustee's sale of his Appeal Rights to Woodlawn, and sought abandonment of the Appeal Rights to him so that he could continue the State Court Appeal. In that regard, he facially does not appear to have waived, forfeited, or untimely sought to enforce his Appeal Rights. But his efforts came too late because he set the wheels in motion for the Trustee to sell his Appeal Rights by filing a chapter 7 case before completing his State Court Appeal.

His prepetition Appeal Rights necessarily became property of his bankruptcy estate subject to the Trustee's exclusive administration, which may (and did) include a sale of the Appeal Rights to Delannoy's adversary under § 363 and Rule 9019. *See Delannoy I*, 2018 WL 4190874, at *7.

In that regard, his bankruptcy filing was the functional equivalent of a relinquishment of his Appeal Rights. Thus, we conclude that the fact that the state appellate court did not hear and decide the merits of his appeal does not militate against the bankruptcy court's application of issue preclusion because he chose to file a chapter 7 petition and thereby voluntarily relinquished to the chapter 7 trustee the right to pursue, or not pursue, the appeal.

23

**F. Privity exists.**

Delannoy finally argues that issue preclusion was not available because privity was lacking. "Privity exists where the party against whom collateral estoppel is asserted was a party to the prior adjudication where the issue to be estopped was finally decided." *Ayers v. City of Richmond*, 895 F.2d 1267, 1271 (9th Cir. 1990). In addition, privity

> *refers to a mutual or successive relationship to the same rights of property*, or to such an identification in interest of one person with another as to represent the same legal rights and, more recently, to a relationship between the party to be estopped and the unsuccessful party in the prior litigation which is "sufficiently close" so as to justify application of the doctrine of collateral estoppel. This requirement of identity of parties or privity is a requirement of due process of law.
>
> Even if these threshold requirements are satisfied, the doctrine will not be applied if such application would not serve its underlying fundamental principles. The determination whether a party is in privity with another for purposes of collateral estoppel is a policy decision. *Privity is essentially a shorthand statement that collateral estoppel is to be applied in a given case assuming the other requirements are satisfied; there is no universally applicable definition of privity. In the final analysis, the determination of privity depends upon the fairness of binding appellant with the result obtained in earlier proceedings in which it did not participate.* Whether someone is in privity with the actual parties requires close examination of the circumstances of each case.

*Rodgers v. Sargent Controls & Aerospace*, 136 Cal. App. 4th 82, 90-91 (2006), *as modified* (Feb. 7, 2006) (emphasis added) (internal quotation marks and

24

citations omitted).

Privity exists here. Delannoy was a party to the state court action at all times leading up to entry of the Judgment. While he was not a party when the Judgment became final, he voluntarily relinquished his Appeal Rights to the Trustee upon his bankruptcy filing. This was tantamount to an assignment of his interests. He cites to no case law that persuades us that his surrender of his Appeal Rights to a third party after participating in the case as a party until entry of Judgment destroyed privity.

## CONCLUSION

Based on the foregoing, we AFFIRM.