NOT FOR PUBLICATION

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re:<br>JEFFREY BAXTER CHARLES,<br>                Debtor. | BAP No. NV-23-1081-FBN<br><br>Bk. No. 17-12568-gs<br><br>Adv. No. 17-01205-gs |
| YVONNE BANER,<br>                Appellant,<br>v.<br>JEFFREY BAXTER CHARLES,<br>                Appellee. | **MEMORANDUM**[*] |

Appeal from the United States Bankruptcy Court
for the District of Nevada
Gary A. Spraker, Bankruptcy Judge, Presiding

Before: FARIS, BRAND, and NIEMANN,[**] Bankruptcy Judges.

## INTRODUCTION

Appellant Yvonne Baner prevailed in state court on her claims for malicious prosecution, abuse of process, and defamation against appellee Jeffrey Baxter Charles. When Mr. Charles filed for chapter 7[1] bankruptcy

---

[*] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value, *see* 9th Cir. BAP Rule 8024-1.

[**] Hon. Jennifer E. Niemann, U.S. Bankruptcy Judge for the Eastern District of California, sitting by designation.

[1] Unless specified otherwise, all chapter and section references are to the

protection, Ms. Baner sought to have the debt declared nondischargeable under § 523(a)(6). After a trial, the bankruptcy court determined that the judgment debt for the abuse of process claim was nondischargeable, but it also held that Ms. Baner failed to establish that Mr. Charles harbored the requisite intent under § 523(a)(6) as to the debt for the malicious prosecution and defamation claims.

Ms. Baner appeals, arguing that the bankruptcy court considered the wrong state court proceeding and erred in determining Mr. Charles' intent to injure her. We discern no error and AFFIRM.

<b>FACTS</b>[2]

## A.  Prepetition events

### 1.  Ms. Baner's preparation of legal documents for Mr. Charles' mother

Ms. Baner is a licensed attorney and is a neighbor of Mr. Charles' mother, Edith Charles, and his sister, Cheryl Corwin. In or around 2009, Mrs. Charles suffered a stroke and became incapacitated. Ms. Baner assisted Ms. Corwin in preparing one or more powers of attorney and healthcare directives concerning Mrs. Charles' care and financial matters. She later prepared a trust transfer deed that transferred Mrs. Charles'

---

Bankruptcy Code, 11 U.S.C. §§ 101-1532.

[2] We exercise our discretion to take judicial notice of documents electronically filed in the underlying bankruptcy case and related cases. *See Atwood v. Chase Manhattan Mortg. Co. (In re Atwood)*, 293 B.R. 227, 233 n.9 (9th Cir. BAP 2003).

residence into a trust that designated Mr. Charles and Ms. Corwin as co-beneficiaries. Mrs. Charles allegedly signed the documents, and Ms. Baner notarized them.

Mr. Charles challenged the documents as fraudulent and claimed that the transfer deed would allow Ms. Corwin to sell the residence in secret. He also asserted that Ms. Corwin misused his mother's assets for her own benefit and demanded an accounting of his mother's finances.

## 2. The 2011 state court lawsuit

In May 2011, Mr. Charles sued Ms. Corwin and Ms. Baner in state court ("2011 State Court Action"). He alleged that they had conspired to gain control of Mrs. Charles' property and finances and had taken advantage of Mrs. Charles while she was incapacitated by (among other things) causing her to sign documents.

Ms. Baner filed a demurrer to the complaint. Mr. Charles says that, on advice of counsel, he decided to seek relief in probate court and therefore agreed to the demurrer. The state court dismissed the 2011 State Court Action without leave to amend. A year later, the probate court appointed a guardian to manage Mrs. Charles' affairs.

Mr. Charles and Ms. Corwin eventually entered into a settlement agreement resolving issues raised in the probate proceeding. That agreement provided in part that Mr. Charles would receive $40,000 from his mother's estate upon her death, which apparently represented money that Ms. Corwin used for her own benefit.

3

### 3. The 2014 state court lawsuit

In July 2014, Mr. Charles filed another lawsuit against Ms. Baner in state court ("2014 State Court Action"). The complaint was based on the same underlying events as the 2011 State Court Action. Mr. Charles alleged largely the same causes of action as he had stated in 2011.

In August 2014, Mr. Charles sent Ms. Baner a letter at the address of her law firm. He stated that he would file suit against Ms. Baner if she continued to "meddle" or assist Ms. Corwin. He accused Ms. Baner of tortiously interfering in his family affairs and alleged that she had engaged in "criminal behavior."

Ms. Baner answered the complaint and filed a cross-complaint against Mr. Charles.[3] She alleged claims for, among other things, abuse of process, malicious prosecution, defamation, and elder abuse.[4]

As for the malicious prosecution claim, Ms. Baner alleged that Mr. Charles based the 2014 State Court Action on the same documents and allegations as the unsuccessful 2011 State Court Action. She alleged that he tried to intimidate her and made false allegations against her "with an ulterior motive to suppress evidence, obstruct justice, assassinate Baner's reputation, and to retaliate against Baner."

---

[3] Ms. Baner filed a motion to dismiss the complaint, arguing that it sought to relitigate issues decided in the 2011 State Court Action, and to declare Mr. Charles a vexatious litigant. The state court denied her motion in November 2014.

[4] Ms. Baner's other claims were effectively dismissed before trial.

As for the defamation claim, she alleged that the accusation of criminal behavior in Mr. Charles' letter constituted libel per se and that the libel was published when her office staff opened and read the letter.

The claims and counterclaims proceeded to trial. The jury found in favor of Ms. Baner on all of Mr. Charles' claims and on her counterclaims. The jury awarded damages as follows:

- abuse of process: $10,000 for past economic loss and $25,000 in punitive damages;

- malicious prosecution: $250,000 for lost earnings and $3,500 in pain and suffering;

- defamation: $100 in assumed damages and $2,000 in punitive damages; and

- financial elder abuse: no damages.

The state court later entered judgment ("State Court Judgment") for Ms. Baner, which the California Court of Appeal affirmed.

## B.    Bankruptcy events

Meanwhile, on May 16, 2017, Mr. Charles filed a chapter 7 petition.

### 1.    The adversary complaint

Ms. Baner filed a timely adversary complaint seeking to have the State Court Judgment debt declared nondischargeable under § 523(a)(6).[5]

---

[5] Ms. Baner also sought to deny Mr. Charles his discharge under §§ 727(a)(3) and (a)(4)(A). The bankruptcy court ultimately dismissed those claims. Ms. Baner does not seek review of that decision.

Mr. Charles denied the relevant allegations.

Ms. Baner moved for summary judgment. She argued that the State Court Judgment conclusively established that the judgment debt was for a willful and malicious injury under § 523(a)(6) and precluded relitigation of those issues. The bankruptcy court denied summary judgment, noting that Ms. Baner failed to offer any detailed analysis of the willful and malicious prongs of § 523(a)(6).

Ms. Baner sought relief from the denial of summary judgment. The bankruptcy court denied the motion, but it agreed that the State Court Judgment conclusively established malice as to the malicious prosecution claim. As such, the issues of malice as to the abuse of process and defamation claims and willfulness as to all claims remained to be litigated at trial.

**2. Trial**

At a one-day trial, only Mr. Charles and his probate counsel, David Korrey, testified. Mr. Korrey recounted his involvement in the probate matter and stated that he reviewed the complaint in the 2014 State Court Action and believed that Mr. Charles had meritorious claims. Mr. Charles testified that he was worried for his mother's wellbeing and was concerned that Ms. Corwin was misappropriating her assets. He said that he did not have any animosity toward or intent to injure Ms. Baner. He also testified that he filed the 2014 State Court Action to force Ms. Baner to rescind the power of attorney and healthcare directive.

6

Ms. Baner did not testify and relied on the record of the 2014 State Court Action.

The court required written and oral closing statements. It also directed the parties to file additional briefing on the issue of whether Mr. Charles had a subjective intent to injure Ms. Baner when he filed and maintained the 2014 State Court Action.

### 3. The bankruptcy court's ruling

In a written ruling, the bankruptcy court reviewed its earlier decision on issue preclusion and also considered whether Ms. Baner had established the elements of § 523(a)(6) at trial. It held that the damages for the abuse of process claim were nondischargeable, but Ms. Baner had not carried her burden as to the malicious prosecution and defamation claims.

### a. Malicious prosecution claim

The court first examined the malicious prosecution claim. It held that the elements of that claim overlapped with the definition of a malicious injury under § 523(a)(6) and that the other requirements for issue preclusion on the question of malice were satisfied. However, the court determined that the State Court Judgment on the malicious prosecution claim did not establish willfulness for the purpose of § 523(a)(6), because "a finding of malice in a malicious prosecution action does not always establish a willful intent to injure under § 523(a)(6)." (Quoting *Dekhtyar v. Chernyavsky (In re Dekhtyar)*, BAP No. CC-18-1203-LSF, 2019 WL 1282753, at *1 (9th Cir. BAP Mar. 19, 2019)). It concluded that "neither the jury verdict

7

nor the judgment for malicious prosecution established that Charles had a subjective intent to harm Baner, or subjectively believed there was a substantial certainty that the filing of the 2011 Lawsuit would injure her."

The court then considered whether Ms. Baner had proven at trial that the damages awarded by the jury were for a willful injury. It observed that an injury is "willful" only if the debtor subjectively intended to cause injury or subjectively knew that the conduct was substantially certain to cause injury. It found that Ms. Baner did not establish that Mr. Charles harbored the required subjective intent or knowledge when he filed the 2011 State Court Action.

The bankruptcy court also addressed the claims that Mr. Charles asserted in the 2014 State Court Action. It noted that he was represented by counsel and that his claims were allowed to go to the jury over Ms. Baner's motion for a directed verdict. The court stated that it is "unclear how those claims can now be deemed frivolous or baseless. . . . [I]t is difficult to accept that Charles had the intent to harm in filing the 2011 Lawsuit when similar claims were permitted to go to trial on substantially the same facts and circumstances in the 2014 Lawsuit."

The court concluded that the state court jury's finding of malicious prosecution satisfied the malice prong of § 523(a)(6), but neither the State Court Judgment nor the evidence at trial established willfulness.

### b. Abuse of process claim

The bankruptcy court next examined the abuse of process claim. It

concluded that, based on the jury instructions and special verdict form in the 2014 State Court Action, when the jury found that Mr. Charles was liable for abuse of process, it "necessarily agreed that Charles acted primarily for a purpose other than succeeding on the merits of his claims." The court found that the purposeful undertaking of the wrongful act in an abuse of process claim established willfulness under § 523(a)(6).

> Regarding malice, the bankruptcy court stated that

> the filing of the 2014 Lawsuit was an intentional act that the jury found was done in a wrongful manner. Because the abuse of process was necessarily done for an ulterior and [in a] wrongful manner, it was also done without just cause or excuse. Finally, because the abuse of process was done to embarrass and harass Baner, the wrongful act necessarily caused her injury . . . .

It thus concluded that "the judgment for abuse of process is sufficiently identical to the willful and malicious components of § 523(a)(6) as a matter of law . . ." and held that the damages for the abuse of process claim, including the punitive damages, satisfied § 523(a)(6).

### c.      Defamation claim

Finally, the bankruptcy court examined the defamation claim, which was based on the 2014 letter that Mr. Charles sent to Ms. Baner at her law office. It stated that, under California law, a plaintiff need only prove "negligence (rather than malice) to recover for defamation." The jury did not make any finding as to Mr. Charles' intent in publishing that statement, so issue preclusion was not appropriate.

9

The bankruptcy court also found that Ms. Baner did not prove at trial that the defamation damages were willful, because she failed to show that Mr. Charles had the subjective intent to injure her when he sent the letter. Rather, it held that the evidence only established that Mr. Charles negligently sent the letter to Ms. Baner's workplace, not that he was substantially certain that the letter would cause her injury.

The bankruptcy court similarly concluded that the punitive damages awarded on the defamation claim did not satisfy § 523(a)(6)'s willfulness prong, because the jury generally found that Mr. Charles had acted with malice, oppression, **or** fraud, which does not necessarily encompass the subjective intent or knowledge that § 523(a)(6) requires.

Even with the benefit of trial in the bankruptcy court, the court found that Ms. Baner did not establish willfulness, only that Mr. Charles "consciously disregarded the potential harm."

The bankruptcy court entered a judgment determining that the State Court Judgment was nondischargeable as to $10,000 in actual damages and $25,000 in punitive damages for the abuse of process claim only.

Ms. Baner timely filed her notice of appeal. Mr. Charles did not appeal.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(I). We have jurisdiction under 28 U.S.C. § 158.

10

## ISSUE

Whether the bankruptcy court erred in holding that Ms. Baner failed to establish that the State Court Judgment on the malicious prosecution and defamation claims constituted willful and malicious injury under § 523(a)(6).

## STANDARDS OF REVIEW

The parties disagree about the proper standard of review. Ms. Baner urges that we must undertake de novo review of the issues concerning the malicious prosecution claim and abuse-of-discretion review for the defamation claim. Mr. Charles argues that Ms. Baner only alleges error with the bankruptcy court's factual findings, so clear-error review is appropriate.

We review de novo the bankruptcy court's legal conclusions, including its construction of § 523(a)(6). *Hamilton v. Elite of L.A., Inc. (In re Hamilton)*, 584 B.R. 310, 318 (9th Cir. BAP 2018) (citing *Carrillo v. Su (In re Su)*, 290 F.3d 1140, 1142 (9th Cir. 2002)), *aff'd*, 785 F. App'x 438 (9th Cir. 2019). "De novo review requires that we consider a matter anew, as if no decision had been made previously." *Francis v. Wallace (In re Francis)*, 505 B.R. 914, 917 (9th Cir. BAP 2014).

We disagree with Ms. Baner's argument about the standard of review for issues of Mr. Charles' intent. Decisions about a party's mental state are factual and are reviewed for clear error. *In re Hamilton*, 584 B.R. at 318. Factual findings are clearly erroneous if they are illogical, implausible, or

11

without support in the record. *Retz v. Samson (In re Retz)*, 606 F.3d 1189, 1196 (9th Cir. 2010). "To be clearly erroneous, a decision must strike us as more than just maybe or probably wrong; it must . . . strike us as wrong with the force of a five-week-old, unrefrigerated dead fish." *Papio Keno Club, Inc. v. City of Papillion (In re Papio Keno Club, Inc.)*, 262 F.3d 725, 729 (8th Cir. 2001) (citation omitted). If two views of the evidence are possible, the court's choice between them cannot be clearly erroneous. *Anderson v. City of Bessemer City*, 470 U.S. 564, 573-74 (1985).

We review the bankruptcy court's application of issue preclusion for an abuse of discretion. *Black v. Bonnie Springs Family Ltd. P'ship (In re Black)*, 487 B.R. 202, 210 (9th Cir. BAP 2013). To determine whether the bankruptcy court has abused its discretion, we conduct a two-step inquiry: (1) we review de novo whether the bankruptcy court "identified the correct legal rule to apply to the relief requested" and (2) if it did, we consider whether the bankruptcy court's application of the legal standard was illogical, implausible, or without support in inferences that may be drawn from the facts in the record. *United States v. Hinkson*, 585 F.3d 1247, 1263 (9th Cir. 2009) (en banc).

**A.** **The bankruptcy court utilized the proper legal standards.**

    **1.** **Section 523(a)(6) excludes from discharge debts arising from "willful and malicious injury."**

The bankruptcy court correctly recited the standard for determining whether the claims were dischargeable under § 523(a)(6). That section excepts from discharge any debt arising from "willful and malicious injury by the debtor to another entity or to the property of another entity[.]" § 523(a)(6). The creditor must prove both willfulness and malice. *Ormsby v. First Am. Title Co. of Nev. (In re Ormsby)*, 591 F.3d 1199, 1206 (9th Cir. 2010). "Under Ninth Circuit law, willfulness and malice are two distinct elements that must not be conflated." *Comcast of L.A., Inc. v. Sandoval (In re Sandoval)*, 341 B.R. 282, 296 (Bankr. C.D. Cal. 2006).

This appeal focuses almost exclusively on the "willful" prong of § 523(a)(6). The "willful injury requirement is met only when the debtor has a subjective motive to inflict injury or when the debtor believes that injury is substantially certain to result from his own conduct." *In re Su*, 290 F.3d at 1142; *see Barboza v. New Form, Inc. (In re Barboza)*, 545 F.3d 702, 706 (9th Cir. 2008) ("A 'willful' injury is a 'deliberate or intentional *injury*, not merely a deliberate or intentional *act* that leads to injury.'" (citation

---

[6] Mr. Charles urges the Panel to strike the opening brief as untimely and dismiss this appeal. We DENY this request because the one-day delay did not prejudice Mr. Charles or materially delay the resolution of this appeal.

omitted)). In other words, it is not enough to prove that the debtor acted intentionally and caused an injury. *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998). This analysis requires an inquiry into the debtor's subjective state of mind. *See In re Su*, 290 F.3d at 1145-46.

"A 'malicious' injury involves '(1) a wrongful act, (2) done intentionally, (3) which necessarily causes injury, and (4) is done without just cause or excuse.'" *Petralia v. Jercich (In re Jercich)*, 238 F.3d 1202, 1209 (9th Cir. 2001) (quoting *Murray v. Bammer (In re Bammer)*, 131 F.3d 788, 791 (9th Cir. 1997) (en banc)).

2. **The bankruptcy court may afford a state court judgment issue preclusive effect.**

The bankruptcy court also identified the correct legal standard for the application of issue preclusion. The bankruptcy court must apply the law of the forum state, so the court properly applied California law. *See Plyam v. Precision Dev., LLC (In re Plyam)*, 530 B.R. 456, 462 (9th Cir. BAP 2015) ("A bankruptcy court may rely on the issue preclusive effect of an existing state court judgment as the basis for granting summary judgment. In so doing, the bankruptcy court must apply the forum state's law of issue preclusion." (citation omitted)).

In California, issue preclusion prevents parties from relitigating issues already decided in prior proceedings. *Lucido v. Super. Ct.*, 51 Cal. 3d 335, 341 (1990). The party asserting issue preclusion must prove five elements. First, the issues to be precluded must be identical to the ones

14

decided in the prior proceeding. Second, the issues must have been actually litigated in the prior proceeding. Third, the issues must have been necessarily decided. Fourth, the decision must have been final and on the merits. Finally, the party to be precluded must be identical to or in privity with a party to the prior proceeding. *Id.*

Even when the five elements are satisfied, the doctrine of issue preclusion is not mechanically applied. Instead, the court must apply it when it advances three policies: "(1) to promote judicial economy by minimizing repetitive litigation; (2) to prevent inconsistent judgments which undermine the integrity of the judicial system; and (3) to provide repose by preventing a person from being harassed by vexatious litigation." *Alpha Mech., Heating & Air Conditioning, Inc. v. Travelers Cas. & Sur. Co. of Am.*, 133 Cal. App. 4th 1319, 1333 (2005) (quoting *Wright v. Ripley*, 65 Cal. App. 4th 1189, 1193 (1998)).

The party asserting issue preclusion has the burden of proving all requisite elements. "To sustain this burden, a party must introduce a record sufficient to reveal the controlling facts and the exact issues litigated in the prior action. Any reasonable doubt as to what was decided in the prior action will weigh against applying issue preclusion." *Brandstetter v. Derebery (In re Derebery)*, 324 B.R. 349, 353 (Bankr. C.D. Cal. 2005) (citing *Kelly v. Okoye (In re Kelly)*, 182 B.R. 255, 258 (9th Cir. BAP 1995)).

**B.** **The bankruptcy court did not err in considering both the 2011 and 2014 State Court Actions.**

In the context of the malicious prosecution claim, Ms. Baner argues that the bankruptcy court erred when it "inexplicably focused on and based its ruling on the filing of the 2011 lawsuit, when the only purpose for inclusion of the 2011 lawsuit in the bankruptcy proceedings was to establish that its dismissal gave notice to [Mr. Charles] of the impropriety of his virtually identical 2014 lawsuit." In other words, she contends that the bankruptcy court paid sole attention to the 2011 State Court Action and ignored the 2014 State Court Action, and that the bankruptcy court should have done the opposite: it should have ignored the 2011 State Court Action and focused exclusively on the 2014 State Court Action. We reject this argument for multiple reasons.

First, Ms. Baner took a very different position in the bankruptcy court. There, she argued that the court should consider both the 2011 and the 2014 State Court Actions. For example, her own supplemental closing brief speaks of Mr. Charles' intent as to the various state court cases, not merely the 2014 State Court Action.[7] Ms. Baner cannot successfully argue

---

[7] This is a sample of Ms. Baner's arguments in the bankruptcy court that invoked both lawsuits, not merely the 2014 State Court Action, as she now claims:

- "There was never a valid purpose **for the 2011 and 2014 lawsuits** other than pure spite: a deliberate, intentional act that, by implication, was designed solely to harm [Ms. Baner] . . . ."(emphasis added);

- "[Mr. Charles] has steadfastly refused to acknowledge that . . . he unsuccessfully sued her **four separate times** spanning nearly a decade . . . . The **endless**

that the bankruptcy court committed reversible error by performing the exact analysis that she asked it to do.

Second, it is simply not true that the bankruptcy court ignored the 2014 State Court Action. Most of its written decision focuses on Mr. Charles' intent in filing the 2011 State Court Action, but it also considered Mr. Charles' intent as to the 2014 State Court Action: it pointed out that the state court had apparently rejected Ms. Baner's argument that the 2014 State Court Action was an improper relitigation of the dismissed 2011 State Court Action, and it said that it was struggling to find that the 2014 State Court Action was improper. It even questioned her counsel about this very point during closing arguments. The bankruptcy court also ordered additional briefing as to the evidence "from (1) the **2014 state court litigation** which establishes what Mr. Charles's purpose was in bringing and maintaining **that litigation**, if not to succeed on the merits, and (2) the briefing and discussion on the same issue from the motion for summary

---

**litigation** caused [Ms. Baner] financial, physical, and emotional harm." (emphases added);

- "The fact that the Baner **lawsuits** were 'collateral damage' to [Ms. Baner] meant nothing to [Mr. Charles]. Any rational evaluation of [Mr. Charles'] motives in his **litigation campaigns** against [Ms. Baner] leads to the inescapable conclusion that his sole intention was to harm [Ms. Baner] . . . ." (emphases added); and

- "The elements of a malicious prosecution claim required proof that [Mr. Charles], while actively involved in bringing **lawsuits**, acted for a purpose other than to succeed on the merits of the claims. The jury found [Mr. Charles] acted in that manner, while actively involved in **those lawsuits**, causing harm." (emphases added).

17

judgment . . . ." (Emphases added.) It stated in its written decision that "Charles was represented by counsel in the 2014 Lawsuit and several of his claims were allowed to go to the jury over Baner's motion for directed verdict. . . . The court is unclear how those claims can now be deemed frivolous or baseless." The bankruptcy court did not ignore the 2014 State Court Action.

Third, contrary to Ms. Baner's arguments, the State Court Judgment is not independent of the 2011 State Court Action. The complaint in the 2014 State Court Action references both lawsuits, and the claim for malicious prosecution was vague and could be read to also include the 2011 State Court Action. Moreover, the jury instructions did not appear to distinguish between the two lawsuits.[8] The directed verdict form's references to "a lawsuit" and "the claim" does not specify which complaint or claim was the basis of the State Court Judgment. When the scope of the underlying judgment is unclear, a court should not apply issue preclusion. *See In re Derebery*, 324 B.R. at 353 ("Any reasonable doubt as to what was

---

[8] If anything, the jury instructions suggest that the State Court Judgment for malicious prosecution was based at least in part on the 2011 State Court Action. When the state court stated that an element of the claim was whether "the lawsuit ended in Yvonne Baner's favor[,]" it instructed the jury that the court would decide "if Yvonne Baner has proven . . . whether the **earlier lawsuit** ended in her favor[,]" based on the jury's decision as to "whether Yvonne Baner has proven that Jeffrey Charles agreed to dismiss the **prior lawsuit** because he was aware that the Temecula judge was going to sustain the demurrer." (Emphases added.) Similarly, with regard to Mr. Charles' belief that he had "reasonable grounds for bringing the lawsuit against Yvonne Baner," the state court told the jury that that issue implicated "whether Jeffrey Charles had reasonable grounds for bringing the **earlier lawsuit** against her." (Emphasis added.)

decided in the prior action will weigh against applying issue preclusion.").

Ms. Baner contends that the bankruptcy court erred because it did not reference Mr. Korrey's testimony in its written decision, which indicates that the court "ignored the basis of the 2014 malicious prosecution claim."

This argument is a red herring. The bankruptcy court clearly considered the germane issue: Mr. Charles' intent, which was informed by his understanding of Mr. Korrey's advice. It referenced Mr. Charles' discussion with "his probate counsel" and his decision to proceed against Ms. Baner. It does not matter whether the bankruptcy court explicitly referenced Mr. Korrey's testimony.

Moreover, this is another misrepresentation of the bankruptcy court's decision. Not only did the court specifically address Mr. Korrey's testimony, but, when analyzing the abuse of process claim, it found that the evidence, including Mr. Korrey's and Mr. Charles' trial testimony, called into question Mr. Charles' "actual intent to injure Baner by filing the 2014 Lawsuit." It explained that, before Mr. Charles initiated the 2014 State Court Action, Mr. Korrey reviewed the complaint and told Mr. Charles that it had merit; Mr. Charles obtained counsel, and the claims survived Ms. Baner's requests for dismissal and directed verdict. The bankruptcy court found that "[a]ll of this strongly suggests that some of Charles's claims, while unsuccessful, were not improper."

This finding, although found in the section of the decision concerning

19

the abuse of process claim, can be equally applied to Mr. Charles' intent as to the malicious prosecution claim. At minimum, it shows that the bankruptcy court did not "ignore" Mr. Korrey's testimony (or the 2014 State Court Action), as Ms. Baner claims.

## C. The bankruptcy court did not err in declining to give issue preclusive effect to the State Court Judgment as to Mr. Charles' intent.

Ms. Baner argues (with little elaboration) that the bankruptcy court erred in declining to rule that the State Court Judgment preclusively established Mr. Charles' intent to injure her. We discern no abuse of discretion.

At the outset, we note that Ms. Baner concedes that "the testimony at the 2014 state trial did not focus on [Mr. Charles'] intent per se[.]" In other words, it is not clear that identical issues of Mr. Charles' subjective intent were actually litigated or necessarily decided in 2014. *See Lucido*, 51 Cal. 3d at 341. This counsels against application of issue preclusion.

Regarding the defamation claim,[9] Ms. Baner argues that the award of punitive damages necessarily implicates a "willful" injury. But the bankruptcy court held, and Ms. Baner does not dispute, that the jury awarded punitive damages for "malice, oppression or fraud," while

---

[9] Aside from her argument that the bankruptcy court did not consider the "correct" lawsuit, Ms. Baner does not argue that the bankruptcy court erred in its refusal to apply issue preclusion to the State Court Judgment for the malicious prosecution claim. We therefore only address the defamation claim.

§ 523(a)(6) requires intentional malice or fraud, not mere "oppression." The bankruptcy court concluded that, "because the jury did not state the specific basis for its award of punitive damages, preclusion is not appropriate on the issue of willfulness under § 523(a)(6)." This is not error. *See In re Plyam*, 530 B.R. at 465 ("Only Intentional Malice and fraud expressly require an intent to cause injury. As a result, only those findings satisfy the § 523(a)(6) willfulness requirement for the purposes of issue preclusion. Conversely, Despicable Malice and oppression, which arise from acts in conscious disregard of another's rights or safety, fail to satisfy the requisite state of mind for § 523(a)(6) willfulness." (citation omitted)).

**D. The bankruptcy court did not clearly err in finding that Ms. Baner failed to establish Mr. Charles' intent.**

Finally, Ms. Baner argues that the bankruptcy court erred in ruling that Mr. Charles did not intend to cause her injury. She claims that the bankruptcy court should have inferred his intent to injure her from the totality of the circumstances. We will not disturb the bankruptcy court's factual finding.

With respect to the malicious prosecution claim, Ms. Baner argues that Mr. Charles failed to seek rescission of the allegedly fraudulent documents in the 2014 State Court Action, and the underlying matter had already been resolved by the 2011 State Court Action and the probate action, so he knew that there was no valid reason for pursuing the 2014 State Court Action. But the bankruptcy court considered Ms. Baner's

arguments and extensively explained its reasons for rejecting her position. It recounted the timing of events and found that they "support Charles' testimony that he did not file the 2011 Lawsuit to harm Baner, or that he subjectively knew that harm was substantially certain to occur." It also stated that the testimony at trial showed that Mr. Charles relied on Mr. Korrey's assessment as to the viability of his claims in the 2014 State Court Action, was represented in the 2014 State Court Action, and successfully overcame Ms. Baner's motion for a directed verdict. The bankruptcy court simply chose to believe Mr. Charles over Ms. Baner, and it was entitled to do so.

With respect to the defamation claim, Ms. Baner contends that the letter that Mr. Charles sent to her work address "unmistakably stat[ed] his malicious intentions . . . ." She said that the bankruptcy court's focus on the possibility of negligent defamation ignored the circumstances, because a lawyer's mail is opened and read by staff, so Mr. Charles knew that the letter would be read by others.

The bankruptcy court found that Ms. Baner did not provide any "persuasive evidence or argument that Charles had the subjective intent to injure Baner by sending the letter to her." She presented no evidence at trial as to Mr. Charles' intent, except the record in the state court. The bankruptcy court did not believe her version of events and found that the evidence showed that Mr. Charles "negligently sent the letter to Baner at her work . . . ." We will not second guess the bankruptcy court's factual

22

finding as to Mr. Charles' state of mind.[10]

## CONCLUSION

The bankruptcy court did not err in holding that Ms. Baner failed to establish that the judgment debt for the malicious prosecution and defamation claims was nondischargeable as "willful and malicious" injury under § 523(a)(6). Accordingly, we AFFIRM.

---

[10] Ms. Baner argues briefly that the defamation claim involved an accusation of "criminal and immoral conduct," which necessarily implicates the "malicious" injury prong of § 523(a)(6). We need not address this argument, because we affirm the bankruptcy court's finding that Ms. Baner did not establish that the damages for the defamation claim were a "willful" injury.